ALUMINUM COOKING UTENSIL CO. v. NATIONAL ALUMINUM WORKS.

(District Court, W. D. New York. September 14, 1915.)

1. TRADE-MARKS AND TRADE-NAMES ☞3—WORD DESCRIPTIVE OF QUALITY OF GOODS—STATUTE.

Where a manufacturer of aluminum ware stamped it with the arbitrary word "Wearever," such word, though expressive of durability, was distinctive and entitled to protection from imitation by other makers of similar ware, for although the registration of a trade-mark consisting of words or devices which are descriptive of the grade or quality of the articles upon which they are used is prohibited by Comp. St. 1913, § 9490, nevertheless a word or mark, though descriptive of the quality and character of the goods, which has not been previously used in connection with such goods, may be entitled to protection, provided that it has acquired a secondary meaning, indicating origin and ownership of the articles to which it is applied.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. §§ 4-7; Dec. Dig. ☞3.]

2. TRADE-MARKS AND TRADE-NAMES ☞59—INFRINGEMENT—DESCRIPTIVE WORDS.

The trade-mark "Everlasting," stamped upon aluminum ware, did not infringe the trade-mark "Wearever," for, though suggesting the same quality of durability, it did not so closely resemble "Wearever" in appearance and sound, when applied to such ware, as to deceive an intending purchaser into believing that he was buying the other goods.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. §§ 68-72; Dec. Dig. ☞59.]

3. TRADE-MARKS AND TRADE-NAMES ☞59—INFRINGEMENT—RESEMBLANCE OF WORDS.

Where the maker of aluminum cooking utensils stamped thereon the trade-mark "Everlasting," in connection with the word "Ware," such trade-mark tended to deceive buyers into thinking that the goods were a heavier and more expensive grade of such utensils, stamped with the trade-mark "Wearever," or "Everwear," and such use of the word "Everlasting," in connection with the word "Ware," was injurious to the maker of "Wearever" utensils, and an unlawful infringement.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. §§ 67-72; Dec. Dig. ☞59.]

4. TRADE-MARKS AND TRADE-NAMES ☞93—UNFAIR COMPETITION—DECEPTION OF BUYERS.

Where the trade-mark used by a maker of aluminum cooking utensils was so nearly like that used by another plaintiff as to tend to deceive the public into buying the goods of the first for those of plaintiff, he could enjoin the unfair competition, without showing actual deception of buyers; it being sufficient if the proofs show that the probable use of the infringing label will be to deceive the ordinary purchaser buying in the ordinary way.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. §§ 104-106; Dec. Dig. ☞93.]

In Equity. Suit by the Aluminum Cooking Utensil Company against the National Aluminum Works. Decree for plaintiff.

Kay, Totten & Powell, of Pittsburg, Pa., for complainant.
Stanchfield, Lovell, Falck & Sayles, of Elmira, N. Y. (Alexander D. Falck, of Elmira, N. Y., of counsel), for defendant.

HAZEL, District Judge. This action in equity was brought for unfair competition in trade and to restrain the defendant, the National Aluminum Works, from using complainant's trade-mark, adopted in 1903 and registered in August, 1905, consisting of the arbitrary word "Wearever," commonly used in the hyphenated form "Wear-Ever," and applied to the manufacture and sale of cooking utensils made of aluminum, and particularly to restrain the defendant from applying the trade-mark "Everlasting," or "Everlasting Ware," to the latter's aluminum cooking utensils.

The first question is whether complainant's trade-mark is descriptive of the character, ingredients, or quality of the product to which it is applied, for, if so, its exclusive appropriation by complainant is not permissible.

[1, 2] The Compiled Statutes (title 60, chapter 2, section 9490) prohibit the registration of a trade-mark consisting of words or devices which are descriptive of the grade or quality of the articles upon which they are used. But, according to the adjudications, a word or mark, even though descriptive of the character and quality of the goods, which has not been previously used in connection with like goods, may nevertheless be entitled to protection, provided it has acquired a secondary meaning indicating origin and ownership of the articles to which it is applied; and if it is appropriated or closely imitated by another in connection with like goods, a presumption arises therefrom of an intention on his part to deceive the public. United Lace & Braid Mfg. Co. v. Barthels' Mfg. Co., 221 Fed. 456.

In support of complainant's contention that its trade-mark "Wearever" is valid, and not merely descriptive, Holeproof Hosiery Co. v. Wallach Bros., 172 Fed. 859, 97 C. C. A. 263, decided by the Circuit Court of Appeals for this circuit, is principally relied upon. There is manifest similarity between the two cases. "Holeproof," as applied to hosiery, was considered to have acquired a secondary meaning by reason of extensive advertising and large sales during many years, a meaning indicating the manufacturer, and not that the hosiery was indestructible, and was therefore held to be nondescriptive. In N. Y. Mackintosh v. Flam, 198 Fed. 571, Judge Holt considered a similar contention, namely, that the arbitrary word "Bestyette," as applied to waterproof capes, was invalid, in that it was descriptive; and he held that, while it was descriptively suggestive, it was nevertheless valid because of its peculiar spelling and the impression produced thereby, but was not infringed by the word "Veribest," applied to a similar garment. So in the present case the word "Wearever," or its hyphenated form, although expressive of durability, is also distinctive and entitled to protection from imitation by others dealing in a similar commodity.

I do not, however, think that defendant's trade-mark "Everlasting" infringes the trade-mark "Wearever," for, although it also suggests durability, it does not so closely resemble the word "Wearever" in appearance and sound, when applied to cooking utensils, as to deceive an intending purchaser into believing that he is buying complainant's

goods when buying defendant's, notwithstanding that the purchaser might perhaps be misled by the similarity in the shape of the utensils, and so does not warrant disposing of the action on that ground. In reaching this conclusion I was influenced by the decision in the "Best-yette" Case, wherein the word "Veribest," which expresses the same idea as "Bestyette," was held not to infringe. In Elliott Varnish Co. v. Sears, Roebuck & Co., 221 Fed. 797, Judge Sanborn, however, held that the words "Roof Leak," as applied to roof paint, constituted a valid trade-mark, and were infringed by the words "Never Leak," used in connection with the same commodity. But I prefer to decide the case on the unfair competition claim, with regard to which I am of a different opinion.

[3] Defendant's trade-mark "Everlasting" is used by it in connection with the word "Ware," and in this form simulates the trade-mark "Wearever," or "Everwear," as the proofs show it was sometimes called, and tends to deceive buyers into buying defendant's ware. I have no doubt that it also creates confusion, which the use of the eagle and shield, together with the stamping of the corporate name on the ware, does not obviate. The defendant's ware is inferior in workmanship and of a lighter and cheaper grade than complainant's, and, in view of the reputation built up by the latter for producing a strong and durable grade of ware, the attempt by the defendant to palm off on the public its cheaper and lighter goods by so close an imitation of the complainant's registered trade-mark as the use of the word "Everlasting" in connection with the word "Ware" conspicuously displayed thereon, is injurious to the complainant and unlawful. Scriven et al. v. North et al., 134 Fed. 366, 67 C. C. A. 348.

[4] The defendant urges, however, that the action must nevertheless be dismissed, as it has not been shown that any one was actually deceived. There is no evidence, it is true, that the defendant or its dealers have actually palmed off its wares for those of the complainant (although there was evidence of untruthful statements and unfair comparisons by dealers in connection therewith); but I think the similarity in dress, due primarily to the fact that the words "Everlasting Ware" closely resemble the words "Wearever" and "Everwear," gives rise to the inference that the defendant intended to have its goods accepted by the buying public for complainant's. If the defendant had distinguished its products by the use of simply the word "Lasting," or some other word, omitting the words "Ever" and "Wear," there would have been no unlawful imitation on its part of complainant's goods; but, assuming that there was no actual intention on the part of the defendant to deceive the public, it has, as the evidence shows, placed in the hands of dealers a means for misrepresentation as to the quality of its goods, and therefore I think the case falls within the decision of Notaseme Hosiery Co. v. Straus et al., 201 Fed. 99, 119 C. C. A. 134, wherein the Circuit Court of Appeals for this circuit held that in a suit for unfair competition it is unnecessary to show actual deception; that it is sufficient if the proofs show that the actual and probable result of the use of defendant's label will be to deceive the ordinary purchaser making purchases in the ordinary way.

226 F.—52

There has been no undue delay, as contended, in bringing this action, nor such acquiescence by the complainant as to bar an injunction.

A decree, with costs, in accordance with this opinion may be entered.