WONDER MFG. CO. v. BLOCK et al.

(Circuit Court of Appeals, Ninth Circuit.   May 6, 1918.)

No. 3118.

1. TRADE-MARKS AND TRADE-NAMES ☜59(1)—INFRINGEMENT—WHAT CONSTITUTES.

Where plaintiffs had a trade-mark in the word "Wizard," defendant's sale of goods identical in appearance under the name "Wonder" was an infringement.

2. TRADE-MARKS AND TRADE-NAMES ☜3(4)—APPROPRIATION—WORDS SUSCEPTIBLE OF.

The words "Arch Builder" and "Heel Leveler," used in connection with insoles in shoes, are susceptible of. exclusive appropriation as trademarks, since they are used in a secondary sense, for the terms of themselves do not suggest the purpose of correcting defects of the human foot; the first signifying one who builds arches, and the second suggesting the shoemaker's trade.

3. PATENTS ☜324(5)—REVIEW—INJUNCTION.

On appeal from an interlocutory injunction in a patent case, the appellate court will go no further than to ascertain whether the court below abused its discretion; therefore, where it was not disputed that there was an infringement by defendant, the question of the extent of the infringement will not be reviewed.

4. PATENTS ☜312(2)—INFRINGEMENT—ACTIONS—EVIDENCE.

Though an earlier patent was not set up in the answer or by notice, it is admissible in an infringement suit as evidence of the state of the prior art, and to aid in construing the claims of the patent asserted to have been infringed.

5. PATENTS ☜312(2)—ACTIONS—EVIDENCE.

Though a prior patent was a mere paper patent, and there was no evidence that the invention had ever been used, it is admissible on the question whether a device infringes a subsequently issued patent.

6. PATENTS ☜328—VALIDITY—ANTICIPATION.

The Block patent, No. 1,127,349, for the support of the anterior metatarsal arch of the foot, held, in view of the prior art, to have been anticipated and not to show invention, as to claim 1, for a flexible insole having a portion located beneath the anterior metatarsal arch of the foot of the wearer, and means for adjusting the thickness of the insole at one or more points along the line of such arch.

7. PATENTS ☜328—SCOPE—INFRINGEMENT.

Block patent, No. 1,127,349, claim No. 2, held limited by the language of the claim, and, as limited, not infringed.

8. PATENTS ☜172—CONSTRUCTION—LIMITATION.

Where a patentee was not the first in the field, and there had been earlier similar inventions, the scope of the invention must be deemed limited, by the language of the claim, to the construction therein specified.

9. PATENTS ☜112(3)—ISSUANCE—PRESUMPTIONS.

The issuance of a patent creates a prima facie presumption of a patentable difference between the device for which a patent was issued and an earlier patented invention.

10. PATENTS ☜328—INFRINGEMENT.

The Block patent, No. 1,061,353, for an arch support, claims 1 and 4, which present the combination of an insole member, an insertion, and self-contained means carried by the insole member and insertion, whereby the insertion may be detachably secured at predetermined points, held not infringed.

☜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Appeal from the District Court of the United States for the Second Division of the Northern District of California; Wm. C. Van Fleet, Judge.

Suit by Alexander E. Block and the Wizard Foot Appliance Company, a corporation, against the Wonder Manufacturing Company, a corporation. From a decree for injunction and order directing an account of profits and damages for infringement of trade-marks and patents, defendant appeals. Remanded with instructions to dissolve the injunction as to certain patents; the decree being otherwise affirmed.

Charles E. Townsend and Dewey, Strong & Townsend, all of San Francisco, Cal., for appellant.

Wm. A. Smith, of San Francisco, Cal., and James Love Hopkins, of St. Louis, Mo. (N. A. Acker, of San Francisco, Cal., of counsel), for appellees.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

GILBERT, Circuit Judge. This is an appeal from a decree of injunction and an order directing an account of profits and damages for infringement of three trade-marks and four patents, all issued to Alexander Block, and all relating to insoles for shoes. The trade-marks are the word "Wizard," certificate No. 110,976, issued June 20, 1916, and the technical trade-marks, "Arch Builder" and "Heel Leveler."

[1, 2] We think that the court below properly disposed of all questions which arise in connection with the use of the trade-marks. The word "Wonder," upon goods identical in appearance with the plaintiff's goods, conveys the same idea as does the word "Wizard," and its use is an infringement. National Biscuit Co. v. Baker (C. C.) 95 Fed. 135; Florence Mfg. Co. v. J. C. Dowd & Co., 178 Fed. 73, 101 C. C. A. 565; Aluminum Cooking U. Co. v. National Aluminum Works (D. C.) 226 Fed. 815; Daniel O'Donnell v. Riscal Mfg. Co. (D. C.) 228 Fed. 127. And the terms "Arch Builder" and "Heel Leveler," as used by the plaintiffs, are susceptible of exclusive appropriation, since they are used in a secondary sense. The primary meaning of "arch builder" is one who builds arches. No suggestion is conveyed that the arch referred to is the arch of the foot. The primary meaning of "heel leveler" is perhaps more obscure, but it is more suggestive of the shoemaker's trade than that of the chiropodist. It is only in its application to the plaintiffs' device that its significance becomes apparent.

[3] It is said that the decree of the court below as to infringement of patent No. 1,043,058, for an arch support, issued November 5, 1912, should be modified, so as to permit the use by the defendant of the arch support shown in plaintiff's Exhibit 5; the contention being that, in view of the limitations placed upon the scope of plaintiff's patent by the proceedings in the Patent Office and the language of the claim, which covers "a plurality of overlapping pockets," etc., the plaintiffs should be limited to the feature which distinguishes that combination from the prior art, to wit, the overlapping pockets, and,

inasmuch as Exhibit 5 shows no overlapping pockets, its use is not an infringement. The contention cannot be considered on this appeal. The decree contains no finding that Exhibit 5 infringes the plaintiffs' patent. It finds only that the defendant has infringed the claim of the plaintiffs' patent. It is not disputed that plaintiffs' Exhibit 3 presents a device which does infringe the patent. This court can consider only the question whether the court below erred in finding that there was infringement, and on the appeal from an interlocutory injunction in a patent case an appellate court will go no further than to ascertain whether or not the court below abused discretion in granting the injunction. Kings County Raisin & Fruit Co. v. United States Consol. S. R. Co., 182 Fed. 59, 104 C. C. A. 499; Blount v. Société Anonyme, etc., 53 Fed. 98, 3 C. C. A. 455; Consolidated Rubber Tire Co. v. Diamond Rubber Co., 157 Fed. 677, 85 C. C. A. 349; Interurban Ry. & T. Co. v. Westinghouse E. & Mfg. Co., 186 Fed. 166, 108 C. C. A. 298.

The defendant admits its infringement of patent No. 1,191,655, issued July 18, 1916, for "combined heel and arch support," and abandons its appeal from the decree as to that patent.

[4] We are of the opinion that the defendant has not infringed letters patent No. 1,127,349, issued February 2, 1915, for a "support for the anterior metatarsal arch of the foot." The patent has two claims. The first is for the combination of "a flexible insole having a portion located beneath the anterior metatarsal arch of the foot of the wearer, and means for adjusting the thickness of the insole at one or more points along the line of said anterior metatarsal arch." The patent to B. Nathan, for an inner sole, December 17, 1907, may be referred to as showing the prior art. Nathan's inner sole contains a continuous transverse pocket beneath the metatarsal arch, wider at the outer-edges than at the center, and removable wedge-shaped fitting members for the pockets. The plaintiffs contend that the Nathan patent is to be disregarded, for the reason that it was not set up in the answer or by notice. But that is no objection to its use as evidence of the state of the art, and to aid in the construction of Block's claim. Grier v. Wilt, 120 U. S. 412, 429, 7 Sup. Ct. 718, 30 L. Ed. 712; Brown v. Piper, 91 U. S. 37, 41, 23 L. Ed. 200.

[5, 6] It is contended, also, that the Nathan patent is without probative value, for the reason that it is but a paper patent, and that there is no evidence that the invention has ever been used. But that fact does not affect its value as evidence upon the question of infringement. Universal Winding Co. v. Willimantic Co. (C. C.) 82 Fed. 228, affirmed, 92 Fed. 391, 34 C. C. A. 415; Packard v. Lacing Stud Co., 70 Fed. 66, 16 C. C. A. 639; E. L. Watrous Mfg. Co. v. American Hardware Mfg. Co. (C. C.) 161 Fed. 362. The Nathan patent presents all the features of claim 1 of the Block patent. It has a flexible insole located beneath the anterior metatarsal arch and means for adjusting the thickness of the insole at one or more points along the line of that arch.

[7-9] Block's second claim presents the combination of "a flexible insole beneath the anterior metatarsal arch, and a series of superim-

posed and overlapping members forming pockets mounted on the lower face of said insole, and insert members adapted to be removably seated in said pockets, substantially as described." The defendant's device has a single inclosed transverse pocket beneath the metatarsal arch, and four slits therein to permit the insertion and adjustment of an insert member, so that the same may be placed at any desired point along the line of the arch. It contains no superimposed or overlapping members forming pockets. If the Block invention were of such a character as to be entitled to broad construction, it might properly be held that the defendant's device presents a series of pockets, although in fact it is but one pocket, with a series of slits opening into the same. But Block was not the first to place pads in pockets in leather insoles, nor was he the first to place a pad beneath a metatarsal arch support. Pockets were old, and pads were old. He was the first, however, to use an insole containing a transverse series of pockets beneath the metatarsal arch. But his claim called for a series of "superimposed pockets," and we are of the opinion that, in view of the express terms of his claim and the state of the prior art, he should be held to have limited intentionally the scope of his invention by the language of his claim. Keystone Bridge Co. v. Phœnix Iron Co., 95 U. S. 274, 24 L. Ed. 344; McClain v. Ortmayer, 141 U. S. 419, 12 Sup. Ct. 76, 35 L. Ed. 800. By the superimposition of the pockets he obtained a structure which holds the pads in position without other attachment, and permits the location thereof at desired points on the line of the arch; whereas the defendant holds its pads in place by the metallic points which attach them to the lower covering of a single pocket.

We may advert also to the fact that on July 11, 1916, a patent, No. 1,191,122, was issued to James Brown, for a "foot corrector"; the invention showing an inclosed pocket beneath the metatarsal arch, the same containing slits at a plurality of points to permit the insertion of a pad, and the adjustment of the same in position, the device being identical with that used by the defendant, with the unimportant exception of the shape of the slits, and the means for attaching the pad. The issuance of that patent created a prima facie presumption of patentable difference from the Block invention. Hardison v. Brinkman, 156 Fed. 962, 87 C. C. A. 8; Miller v. Eagle Mfg. Co., 151 U. S. 186, 208, 14 Sup. Ct. 310, 38 L. Ed. 121.

[10] The defendant was held to have infringed claims 1 and 4 of patent No. 1,061,353, for an "arch support." Claim 1 presents the combination of "an insole member, an insertion and self-contained means carried by the insole member, and the insertion whereby the insertion may be detachably secured to the insole member at predetermined points." Claim 4 differs from claim 1 only in calling for a plurality of inserts, instead of a single insert. In the specifications the insole is described as containing imbedded therein a number of the sockets of ordinary glove fasteners, distributed at the heel, the instep, and at the ball of the foot. The insert is described as mounted with the obverse half of the glove fastener. No other locking device is mentioned, but the applicant said:

"It is obvious that the securing means may be any two-part separable locking device of which one part is seated in the insole member, and the opposite part in the lift or insertion, and which is therefore practically self-contained within the parts themselves, so that I am enabled to dispense with the use of bars, pockets, or other mountings in securing the lift or insertion to the insole member."

The defendant's device has no socket in the insole, has no two-part separable locking device of which one is in the insole and the other in the insertion, and it is not enabled to dispense with the use of pockets. It makes an insole with a pocket therein, and fastens its insertions by means of small sharply pointed metallic projections which penetrate the lower covering of the pocket. It uses no two-part device, and no interlocking device, and it does not attach the insert at predetermined points on the insole. These differences, we think, are sufficient to avoid infringement.

The cause will be remanded to the court below, with instructions to dissolve the injunction as to patents 1,127,349 and 1,061,353. In other respects the decree is affirmed. In the view of the defendant's inequitable use of advertising matter, we are not disposed to award costs to either party on the appeal.