## CRAWFORD-AUSTIN MFG. CO. v. CLIFTON MFG. CO.

District Court, W. D. Texas, Waco Division. April 26, 1928.

No. 171.

1. Trade-marks and trade-names and unfair competition ⊙⟫55—Intent to adopt trade-mark as nearly like another's as possible without violating law cannot be considered on question of infringement (15 USCA § 96).

Intention to adopt trade-mark or device as nearly like another's trade-mark as possible without violating the law cannot be considered, in passing on question of infringement or non-infringement under 15 USCA § 96.

2. Trade-marks and trade-names and unfair competition ⊙⟫58—Issue in action for trade-mark infringement is whether defendant's mark is so nearly like plaintiff's as to cause purchasers to buy defendant's goods as plaintiff's (15 USCA § 96).

The issue to be decided in action under 15 USCA § 96, for infringement of trade-mark, is whether defendant's trade-mark is so nearly like plaintiff's as to produce in minds of persons trading in their goods such confusion as will cause them to buy defendant's goods as plaintiff's.

3. Trade-marks and trade-names and unfair competition ⊙⟫58—Stenciled trade-mark "REX–ALL," above outlined crown on russet brown canvas tents, etc., held to infringe stenciled trade-mark "Dux–baK" above outlined duck on same colored canvas; "colorable imitation" (15 USCA § 96).

Stenciled trade-mark "REX–ALL" above outline figure of crown on russet brown canvas tents, tarpaulins, etc., with word "Mildewproofed." Above word "Waterproofed" below such outline, held, to infringe stenciled trade-mark "Dux–baK" above outlined side view of duck, with words "Waterproofed and Mildewproofed" below, on same colored canvas; combination of color and general similarity of words, design, and make-up being a "colorable imitation," within 15 USCA § 96, as calculated to mislead and deceive ordinary purchaser.

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Colorable Imitation.]

---

**4. Trade-marks and trade-names and unfair competition ☜53—Trade-mark infringement must be tested by circumstances ordinarily existing when goods are offered for inspection of purchasers (15 USCA § 96).**

Infringement of trade-mark, within 15 USCA § 96, must be tested by application of facts and circumstances ordinarily existing when goods are offered in trade for inspection of probable purchasers.

**5. Trade-marks and trade-names and unfair competition ☜58—Combination of color with dress and display of registered trade-mark may be considered on question of colorable imitation (15 USCA § 96).**

Combination of color, forming no essential part of trade-mark, with dress and display of such mark as registered, may be considered as testing question of colorable imitation, within 15 USCA § 96.

**6. Trade-marks and trade-names and unfair competition ☜93(1)—Doubt of deceptive similarity should be resolved against one knowing of registered trade-mark before using his trade-mark.**

Where registered trade-mark is known by infringer before putting out his trade-mark, any doubt of deceptive similarity should be resolved against him.

In Equity. Action by the Crawford-Austin Manufacturing Company against the Clifton Manufacturing Company. Temporary injunction granted.

Spell, Naman & Penland, of Waco, Tex., for plaintiff.

Nat Harris, of Waco, Tex., for defendant.

WEST, District Judge. Two Texas corporations, both having principal places of business in McLennan county, Texas, are engaged in the business of manufacturing and selling tents, tarpaulins, and wagon covers of waterproofed cloth. The plaintiff, Crawford-Austin Manufacturing Company, for convenience will be called "Crawford." The defendant, Clifton Manufacturing Company, will be called "Clifton."

Crawford uses a registered trade-mark stenciled on its manufactured articles, using the word "Dux-baK." Just below said word is stenciled a side view of a duck, outlined in broken lines. Said manufactured articles, bearing the said trade-mark, are being sold in Texas and other states of the Union and in interstate commerce, and also in the republic of Mexico. This trade-mark was rendered distinctive by the adoption of an unusual color, russet brown, to the manufactured articles, and the trade-mark has been widely advertised, and the trade-mark and plaintiff's products have become widely and favorably known to dealers and the public generally, resulting in the establishment of a lucrative business.

25 F.(2d)—62

Crawford alleges that Clifton, competing manufacturer and seller of like products, covering the same trade territory, adopted and used the trade-mark "REX–ALL." Below said word being shown the outline figure of a crown, which constitutes a colorable and fraudulent imitation of Crawford's trade-mark, which so resembles Crawford's as to create confusion in the minds of dealers and buyers of said articles, thereby misleading and inducing buyers to act upon the belief that Clifton's goods were the same as plaintiff's.

Allegation is made that Clifton is using and intends to use his trade-mark throughout the same trade territory, and unless restrained will subject Crawford to irreparable injury, praying for restraining order and permanent injunction. This is the usual action of infringement, praying for relief by restraining order and injunction to prevent resultant damages. The statute provides that:

"* * * Any person who shall, without the consent of the owner thereof, reproduce, counterfeit, copy, or *colorably imitate* any such trade-mark and affix the same to merchandise of substantially the same descriptive properties * * * shall be liable * * * for damages." USCA tit. 15, § 96.

At the hearing of the application for preliminary injunction, Crawford contended that a colorable imitation of his trade-mark was effected, because the word used was (a) "a word of similar length and division in the syllables, and containing similar letters; and (b) by similar make-up or background upon which the word was placed; or (c) the combination of the two."

[1] It is apparent that Clifton's purpose and intent was to adopt a trade-mark or device of a character that would come as near to Crawford's as possible, without going over the line. This is another way of stating that it was his intention to get all the advantage possible by similarity, without coming within the terms of the law. But the courts hold that this character of intent is not to be considered in passing upon the question of infringement or noninfringement. USCA tit. 15, § 96, note 26, "Knowledge or Intent," and cases cited.

[2] The issue to be decided is narrowed to the question whether Clifton's trade-mark is so nearly like Crawford's as to produce in the minds of persons trading in their goods confusion to such an extent as will cause them to buy Clifton's goods as Crawford's. USCA tit. 15, § 96, note 23, "Deception of Public," and cases cited.

[3] The two words are not of similar meaning, or derivation, or suggestion, or sound. The eye tells us that each of the words contains six letters, divided by a dash into two syllables, of three letters each. Clifton's word "REX–ALL" is composed of all capital letters. Crawford's "Dux-baK" is dissimilar, in that only the first and last letters are capitals, the others small. In the first syllable of each word the letter "X" appears, but one is a capital and the other a small letter. In the second syllable of each is found the letter "A," but one is a capital, the other a small letter. The two words are alike, in that they each are stenciled in arc form. Below Crawford's word appears the figure of a duck, crudely outlined by broken stenciled lines and dashes. Below Clifton's word appears the crude stenciled representation of a crown. The crown and the duck, as stenciled on the canvas, have a sort of similarity. Below the figure of the duck on Crawford's mark appear the following letters:

Trade Mark Reg.

FORMULA AND PROCESS PAT'D

"It Turns Water Like a Duck's Back"

Waterproofed and Mildewproofed.

Below the outline of the crown on Clifton's mark appear the following letters:

MILDEWPROOFED

WATERPROOFED.

Crawford's trade-mark being stenciled upon the canvas article sold, and the color of the fabric being of an unusual russet brown color, have a marked distinction. The use of canvas of this identical color by Clifton on similar waterproofed canvas displays at casual glance a similarity greater than can be demonstrated by the written word. There was also introduced in evidence an enlarged photograph of each of the trade-marks under discussion. Placing the photographs alongside of the russet brown canvas merchandise, with the stencil used by each of the parties, rendered it very clear that any judgment formed or based upon the comparison between the two photographs would be misleading and unreliable. This is so because the reproduction of the trade-marks stenciled upon the canvas, each of uniform russet brown color, as stated before, showed at casual glance a marked similarity. This may be attributed to the fact that the stenciled words and outlines or figures of a trade-mark upon a roughened surface, with the ink impressions not always clearly shown, and perhaps not applied with uniform care, make a wholly different appearance from that of the photograph.

[4] Infringement must be tested by the application of facts and circumstances that ordinarily exist under circumstances when the goods are offered in trade for inspection of probable purchasers. It may be confidently assumed that the purchaser will not have, as the court did, the benefit of a careful inspection of two competitive lines of merchandise, each stamped with its distinctive mark. Under those circumstances, Clifton's merchandise may very well be sold to an average purchaser as Crawford's, because of the similarity and general appearance, as it appears to him.

The confusion existing among the court decisions is accounted for by the general words of the statute, requiring that interpretation and meaning of the words "colorably imitated" must depend wholly upon the facts in each case, rather than attempt to cite cases in point as having the effect of evidence. Whether as evidence or as authority they still leave the chancellor to find the law from the facts in the case under consideration. The cases hold that the question of infringement must be determined upon the conditions which ordinarily apply when buyer and seller are situated in conditions which ordinarily prevail. Liggett & Myer Tobacco Co. v. Hynes (D. C.) 20 F. 883, affirmed 128 U. S. 182, 9 S. Ct. 60, 32 L. Ed. 395; Ansehl v. Williams (C. C. A.) 267 F. 15; Amoskeag Mfg. Co. v. Trainer, 101 U. S. 51, 25 L. Ed. 993.

The affidavits of two merchants are offered by the Crawford Company, who are familiar with the goods of both, having dealt in the goods of a like character. They express the opinion that the manner in which the Clifton mark is stenciled on fabric of the same color as that of Crawford's gives an appearance of each so similar that confusion will result and that customers could be deceived.

[5] The exhibits in evidence of two trade-marks stenciled on samples of waterproofed canvas of each party make it plain that the unusual color of Crawford's sample was distinctive. If color be eliminated in considering the question of fact as to colorable imitation, the answer might with reason be either "yes" or "no." The russet brown color formed no essential of Crawford's trade-mark, but the combination of this color with the dress and display of the mark as registered may properly be considered as testing the question of colorable imitation.

The case of Schlitz Brewing Co. v. Houston Ice & Brewing Co. et al., 250 U. S. 29, 39 S. Ct. 401, 63 L. Ed. 822, is authority for

the proposition that elements such as color common to the public may be used in combination with essential elements of a trademark. "It is not necessary that the imitation of the plaintiff's feature taken alone should be sufficient to deceive. It is a fallacy to break the fagot stick by stick. It would be enough if, taken with the elements common to the public, the inscription accomplished a result that neither would alone."

The evidence shows that the use of the russet brown color by Crawford was distinctive and unusual, in that such color was not used on other waterproofed products of like character by other dealers, except Clifton; also that Clifton's trade-mark, when stenciled on canvas of the same color as Crawford's, resulted in a trade-mark resemblance that would cause purchasers to mistake one's goods for the other.

[6] Where a registered trade-mark was known, as shown by the facts in this case, by the infringer before putting out his trade-mark, any doubt of deceptive similarity should be resolved against him. Bass v. Feigenspan (C. C.) 96 F. 206; Waltke v. Schafer, 49 App. D. C. 254, 263 F. 652; United Electric Co. v. Replogle, 53 App. D. C. 228, 289 F. 628; Guggenheim v. Cantrell, 56 App. D. C. 100, 10 F.(2d) 895.

From the foregoing findings of law and fact the court is of opinion that Clifton's trade-mark infringes that of Crawford, because of the combination of color and general similarity of words, design, and make-up with Crawford's; the similarity being such as is calculated to mislead and deceive the ordinary purchaser.

Accordingly a temporary writ of injunction will issue, restraining the defendant, Clifton Manufacturing Company, pending the final determination of this suit, from using its said trade-mark, in terms as prayed for by the plaintiff.