**DWIGHT S. WILLIAMS CO., Inc.,**
Plaintiff,

v.

**LYKENS HOSIERY MILLS, Inc.,**
Defendant.

**Civ. A. 1026.**

United States District Court
W. D. North Carolina,
Charlotte Division.

Oct. 24, 1955.

Eaton & Bell, Charlotte, N. C., for plaintiff.

Francis H. Fairley, William F. Long, Charlotte, N. C., for defendant.

WARLICK, District Judge.

This is an action for unfair competition and infringement filed in the Charlotte Division of this District, and heard by the court without a jury on oral evidence, stipulations and other provided means. The hearing brought out facts as follows:

Plaintiff is a New York corporation engaged in selling hosiery with its place of business on Fifth Avenue in New York City. It does not manufacture hose but as selling agent has its products manufactured for it and under its direction, and thereafter sells to the hosiery trade. It and its predecessors have been engaged continuously as such for approximately thirty five years. On occasion it acts as commission agent and factor. It sells hosiery over the greater portion of the United States.

The defendant, Lykens Hosiery Mills, Inc., is a Pennsylvania corporation, and it and its predecessors in title have been engaged in manufacturing men's hose and work socks for approximately thirty years, or more. Formerly its manufacturing plant was located in Lykens, Pennsylvania, but it more recently moved south and is now located in Marion, in the Western District of North Carolina. Subsequent to the institution of this action against it, defendant experienced financial difficulties and until recently its operation was permitted under an order allowing the debtor to remain in possession. At the time of the trial that was its actual status. It now has adjusted its difficulties and having satisfied its creditors is in full possession of the assets of the corporation.

Plaintiff had at a time prior to the charges herein complained of, adopted as a trademark in its hosiery sales, the name "Railroad" in connection with a design of a train and secured on its application two certain registrations with the United States Patent Office for such trademark, all as appears on the exhibits being attached to the complaint filed in the action,—one dated May 2, 1950, for Registration No. 524,743, and another dated January 12, 1954 for Registration No. 584,507, each showing a train as the design. That these designs are stamped on a transparent cellophane wrapper by a process now available and are used as decorative wrappers on the packaged socks. That each such package holds three pairs of men's work socks.

That on January 4, 1955, and during the pendency of this action, plaintiff registered in the Patent Office under No. 600,543, this trademark: "Sock Line of the Nation" and on February 15, 1955, under Registration No. 602,189, plaintiff secured "The Railroad Sock" as a trademark. Approximately 20% of the plaintiff's business is derived from the sale of the "Railroad Sock".

The wrapper in which plaintiff markets its "Railroad" work socks and from which the alleged unfair competition and infringement comes about by the marketing

process of the defendant is approximately eleven inches long and five inches wide,—is made of transparent cellophane and by a process of lamination in conjunction with printing, the following is stamped thereon: A picture of a railroad train of the vintage of one hundred years ago, the engine being much alike in appearance to the "General" now kept in the passenger station of the L & N Railroad in Chattanooga or the "Texas" which is preserved for posterity in Grant Park in Atlanta. It is a replica of a wood burner with large stack and has coupled to it two passenger coaches of the type used in that far off day. The engine and the coaches are painted black, red and green. The smoke coming from the stack is in red and as it flows from the engine and over the tender and coaches, has the word "Railroad Sock" printed in white letters on it. Immediately under that is "Registered U. S. Pat. Office". On a green background, in white letters surrounded by a red border and placed under the engine and coaches will be found these words: "Guaranteed a full month's wear in every pair." "Nylon heel and toe reinforced". In front of the engine this appears: "3 pair" the figure three being in white with green background and the word "pair" being printed in red. At the seam on the side of the wrapper are these words in red, bordered with black: "Sock Line of the Nation". At the top and bottom of the cellophane wrapper one sees black lines running more or less horizontally. On both the front and the back of the wrapper will be found a genuine facsimile in appearance of the registered trademarks of the following railroads: New York Central System, Nickel Plate Road, New York, New Haven and Hartford Railroad, Burlington Route, Northern Pacific, Illinois Central, the Seaboard Airline Railroad, Reading Lines, Southern Serves the South, The Great Northern Railway, Cotton Belt Route, L & N, Boston & Maine, Wabash and Sante Fe line. All of which the plaintiff secured the right to use by authority of each individual railroad company. On the back of the wrapper again appears "The Railroad Sock". This

unquestionably constitutes a unique package, exceptionally attractive, and one that would be unusually easy to retain in the mind. Plaintiff has expended considerable monies through the years in advertising the sale of its socks.

This is the wrapper that the defendant is charged with infringing by its use of a package wrapper in the sale of its manufactured products.

The defendant in more recent years and particularly since marketing conditions have radically changed, has used different trade labels and packages in the sale of its various manufactured products and has advertised its goods for sale under some five or six of their different labelled trade names. Sometime during 1953 it began the marketing of its men's anklets and work hose in a transparent cellophane package with the following markings thereon: The word "Lykens" in white letters on a red oval background. In red letters on a white background these words are found: "Men's Anklets". In white letters on a red background "3 pair" appears. Under that is a present day streamline passenger engine with the cars attached as far as the design appears. On the front of the engine where ordinarily the railroad name or number appears, the letter "L" is found and in some of the allegedly infringed wrappers the word "Lykens" appears in place of the "L". This train is painted white and black. Thereunder these statements are found: "Union Made. Nylon Reinforced Heel and Toe. 100% combed cotton. Laundry Tested." "Size." "Color". On the back of the wrapper the word "Lykens" appears followed by the word "Trainman" and a small picture of the streamliner likewise is shown identically as that shown on the front of the wrapper.

The above recitation accurately describes the alleged infringing wrapper in which the defendant markets three pairs of its anklets or work hose and is that product which is charged with the infringement and unfair competition as alleged in the complaint. This wrapper is

attached to these findings and made a part thereof.

The defendant has advertised these socks rather extensively since 1953 as it has done in the sale of all of its products and has evidently expended considerable monies in its efforts to successfully place them on the market.

Among other things plaintiff contends that the word "Trainman" and "Railroad" have the same significance and that defendant's use of the word "Trainman" and the pictural illustration of a train constitute a colorable imitation of the plaintiff's "Railroad" trademark; and is so similar as likely to cause confusion or mistake and to deceive a purchaser as to the source and origin of the product, and that such infringement of plaintiff's trademark constitutes unfair competition which entitles plaintiff to the injunctive relief sought and the damage later to be determined. Plaintiff does not contend that the defendant's wrapper is a copy of plaintiff's trademark, but does contend that it is a colorable imitation thereof.

The defendant contends that there is no similarity in the wrapper used. That it had no knowledge of plaintiff's wrapper and that it adopted the word "Trainman" as a good suggestion in the sale of its work socks through repeated conversations with various employees of railroad companies in the Lykens, Pennsylvania area. That its modern streamline train could in no wise be confused with the woodburner used by the plaintiff in the marketing of its socks.

■ Much has been written as to the law in matters of this kind but little it seems could be gained from an assembling of the various authorities that are cited and the law that is contended as being applicable. The term trademark includes any word, name, symbol, or device or any combination thereof adopted and used by a manufacturer or merchant to identify his goods and distinguish them from those manufactured or sold by others. Trade-Mark Act of 1946, Sec. 45, 15 U.S.C.A. § 1127.

The proper function of a trademark is that by association with goods it becomes a means of identification of the origin or ownership of the article and hence a symbol of good will. This essential element is the same both in trademark cases and in cases of unfair competition unaccompanied with trademark infringement. The law of trademarks is but a part of the law of unfair competition. Hanover Star Mill Co. v. Metcalf, 240 U.S. 403, 413, 36 S.Ct. 357, 60 L.Ed. 713; Walgreen Drug Stores v. Obear-Nester Glass Co., 8 Cir., 113 F.2d 956, 961; F. W. Fitch Co. v. Camille, Inc., 8 Cir., 106 F.2d 635.

■■ Since no evidence of probative value was offered of actual instances of confusion in the purchase of these goods, the test comes to that of deceptive similarity, and this is whether

"ordinary purchasers, buying under the usual conditions in the trade and exercising ordinary care, would likely be induced to purchase the article to which the accused trade-mark is affixed, believing it to be the plaintiff's article. Queen Mfg. Co. v. Isaac Ginsberg & Bros., Inc., 8 Cir., 25 F.2d 284, 287; S. S. Kresge Co. v. Winget Kickernick Co., 8 Cir., 96 F.2d 978, 987." Seven Up Co. v. Cheer Up Sales Co., 8 Cir., 148 F.2d 909, 911.

"It is the generally accepted rule that a designation is confusingly similar to a trade-mark if an ordinary prospective purchaser, exercising due care in the circumstances, is likely to regard it as coming from the same source as the trade-marked article. Schneider Brewing Co. v. Century Distilling Co., supra [10 Cir., 107 F.2d 699]; Victor American Fuel Co. v. Huerfano Agency Co., D.C., 15 F.2d 578." Avrick et al. v. Rockmont Envelope Co., 10 Cir., 155 F.2d 568, 572.

The test finally comes to this: Whether the similitude in the labels would properly deceive a purchaser who exercised ordinary prudence, not the careless buyer who makes no examination. Ph. Schnei-

der Brewing Co. v. Century Distilling. Co., 10 Cir., 107 F.2d 699.

After a careful and painstaking study of the label, the contents, markings, get up and the over all appearance of each, I come up with the conclusion that there is no similarity in the two labels and that no confusion would likely result to a purchaser who would exercise ordinary care and prudence, since each is so vastly different from the other. In fact it is inconceivable to me that one desiring to purchase work socks would be deceived in favor of defendant's "Trainman Socks" as packaged over against the "Railroad Sock" of the plaintiff. I therefore am of the opinion that the trademarks are wholly unlike and that there is no likelihood of confusion; that there is no infringement of plaintiff's marks and that the plaintiff is not entitled to enjoin defendant from the use of its wrapper. That there has been no unfair competition and that plaintiff is not entitled to recover.

Counsel will submit decree.