**DWIGHT S. WILLIAMS CO., Inc.,**
Appellant,

v.

**LYKENS HOSIERY MILLS, Inc.,**
Appellee.

No. 7135.

United States Court of Appeals
Fourth Circuit.

Argued April 11, 1956.

Decided May 15, 1956.

Paul B. Bell, Charlotte, N. C. (Paul B. Eaton, and Eaton, Bell, Hunt & Seltzer, Charlotte, N. C., on brief), for appellant.

Francis H. Fairley, Charlotte, N. C. (Harold A. Lipton and Booth, Lipton & Lipton, New York City, on brief), for appellee.

Before SOPER and DOBIE, Circuit Judges, and PAUL, District Judge.

DOBIE, Circuit Judge.

This civil action, alleging trademark infringement and unfair competition, was instituted in the United States District Court for the Western District of North Carolina by Dwight S. Williams. Co., Inc., (hereinafter called Williams) against Lykens Hosiery Mills, Inc., (hereinafter called Lykens). Williams. alleged the adoption and long and continuous usage of certain trademarks, in

connection with the sale of men's hosiery. These comprise the words "The Railroad Sock" used both alone and in connection with the pictorial illustration of a train. Williams also alleged the adoption and long and continuous usage of various train and railroad insignia in connection with the packaging and advertising of its men's work socks together with various pictorial illustrations carrying out a general train and railroad theme in association with its trademarks.

During the latter part of 1953, Lykens began manufacturing and shortly thereafter selling and distributing men's work socks throughout the United States under the name Trainman used in association with the pictorial illustration of a train. Williams further alleged that these sales by Lykens, in a dress and package similar to Williams' constituted an effort to trade upon and capitalize upon the good will and identity established by Williams in connection with its trademark "The Railroad Sock" and associated marks and designs and that these acts by Lykens constituted unfair competition and trademark infringement.

Lykens admitted use of the trademark Trainman together with pictorial illustrations of a train and denied the ownership by Williams of the trademark "The Railroad Sock" and pictorial train illustration. Lykens further alleged that its use of the name Trainman together with a pictorial illustration of a train was lawful in view of alleged uses by others of a train design or illustration in association with various other types of wearing apparel.

Upon trial of the case, the District Judge rendered judgment in favor of Lykens and Williams has appealed to us. The opinion of the District Judge is reported in D. C., 135 F.Supp. 213.

Two questions are before us on this appeal:

(1) Has Lykens infringed the registered trademarks of Williams by using in connection with the advertising and sale of its work socks, the name "Trainman" together with a pictorial illustration of a train?

(2) Do the acts of Lykens constitute unfair competition with Williams?

We think these questions must be answered in the affirmative and that the judgment below must be reversed.

Williams is a New York corporation engaged in the business of selling hosiery. The business was established prior to 1911. Williams and its predecessors are now and have been continuously since prior to 1911 engaged in selling hosiery wholesale in their own right and as commission agents for various mills and doing a general wholesale merchandise business in hosiery. This hosiery is sold throughout the United States through wholesale distributors who in turn sell to retailers.

Robert P. Steele and Co., the predecessor of Williams, sometime prior to July, 1913, adopted and began using as a trademark for men's hosiery the pictorial illustration of a train in connection with the words "The Railroad Sock". Since prior to July, 1913, Williams and its predecessors have continuously used and are now using the trademark in connection with their sales of men's work socks. The mark has been used in various ways, such as "The Railroad Sock" alone, and in combination with pictorial illustrations of trains, both modern and old types. Since at least as early as 1950, and prior to the entry of Lykens into the field, Williams has used in association with its mark, both in packaging and advertising its work socks, various railroad and train insignia and pictorial illustrations carrying out a general train and railroad theme.

On July 10, 1913, Robert P. Steele and Co. applied for a copyright on the label it was then using which showed the pictorial representation of a train and "The Railroad Sock", and on November 18, 1913, the United States Patent Office issued a Certificate of Copyright, No. 3424, covering this label.

On November 10, 1948, Williams applied for registration of its trademark showing the words "The Railroad Sock" and the pictorial representation of a modern locomotive and train and on May

2, 1950, the United States Patent Office issued Registration No. 524,743 to Williams for this mark used on socks for men. Williams also owns Registration No. 584,507, issued January 12, 1954, covering the pictorial illustration of an older type locomotive and train; Registration No. 600,543, issued January 4, 1955, for "Sock Line of the Nation"; and Registration No. 602,189, issued February 15, 1955, for "The Railroad Sock". All of these registrations were for socks for men and all pertained to the general railroad and train theme used by Williams in selling its work socks.

Williams and its predecessors have spent large sums of money in advertising and popularizing "The Railroad Sock" mark in connection with the general train theme. During the years 1951 through 1954 inclusive, Williams spent $42,037.50 in advertising its Railroad sock and during that time sold 937,000 dozen pairs of Railroad socks. Williams also sells other types of socks under various other trademarks but sales of its Railroad socks presently constitute approximately twenty per cent of its business.

Lykens is a corporation chartered under the laws of Pennsylvania in 1946. It is a successor to the firm of Lykens Hosiery Mills, organized in 1938 and is engaged in the business of manufacturing and selling men's hosiery including men's work socks. It formerly conducted its manufacturing operations in Lykens, Pennsylvania, and in the early part of 1954 moved its entire manufacturing business to Marion, North Carolina.

Sometime prior to 1954, Lykens began using the trademarks Lipton, Lykens and Thrift-pak on its socks and Lykens is still using these marks.

In the latter part of 1953, Lykens began manufacturing and shortly thereafter selling and distributing men's work socks throughout the United States under the name and style Trainman with a pictorial illustration of a train. Promptly after notice of these sales by Lykens, on January 7, 1954, Williams,

through its attorney, notified Lykens of these rights and trademarks of Williams; it also complained of the use by Lykens of the word Trainman and the pictorial illustration of a train. Lykens has continued to sell men's work socks on an expanding nationwide basis under the Trainman name in packages bearing pictorial illustrations of trains.

The Trademark Act of 1946, § 45, 15 U.S.C.A. § 1127, sets out:

"The term 'trade-mark' includes any word, name, symbol, or device or any combination thereof adopted and used by a manufacturer or merchant to identify his goods and distinguish them from those manufactured or sold by others."

When a manufacturer or dealer has identified his goods by a trademark, which points to him as the source thereof, others are excluded from applying the same or a similar mark to such goods and the function of a trademark is to designate the goods as the product of a particular trader and to protect his good will against the sale of another's product as his. Hanover Star Milling Co. v. Metcalf, 240 U.S. 403, 36 S.Ct. 357, 60 L.Ed. 713; McLean v. Fleming, 96 U.S. 245, 254, 24 L.Ed. 828.

In United Drug Co. v. Theodore Rectanus Co., 248 U.S. 90, 98, 39 S.Ct. 48, 51, 63 L.Ed. 141, Mr. Justice Pitney described a trademark as:

"a convenient means for facilitating the protection of one's good-will in trade by placing a distinguishing mark or symbol—a commercial signature—upon the merchandise or the package in which it is sold."

In Mishawaka Rubber & Woolen Mfg. Co. v. S. S. Kresge Co., 316 U.S. 203, 205, 62 S.Ct. 1022, 1024, 86 L.Ed. 1381, Mr. Justice Frankfurter stated:

"The protection of trade-marks is the law's recognition of the psychological function of symbols. If it is true that we live by symbols, it is no less true that we purchase goods by them. A trade-mark is a merchandising short-cut which induces a

purchaser to select what he wants, or what he has been led to believe he wants."

In Avrick v. Rockmont Envelope Co., 10 Cir., 155 F.2d 568, 571, 572, Circuit Judge Murrah observed:

"Although the primary purpose of a trade-mark is to indicate the origin, manufacture and ownership of the article in the mind of the purchasing public, it is usually associated with the quality of the product which it symbolizes. Trade-marks are no longer 'regarded simply as an indicium of a known source', they now 'perform the additional function of an advertising and selling device'."

The rights of Williams are not limited to the exact style shown on its package or in its registrations. Its adoption and continuous usage of the railroad mark and the pictorial illustration of a train together with other train and railroad indicia and symbols for many years prior to the entry of Lykens into the field give to Williams rather broad rights to any device, mark or symbol of this character within the significance and meaning of train or railroad as applied to men's socks.

■ In McLean v. Fleming, 96 U.S. 245, 251, 24 L.Ed. 828, Mr. Justice Clifford thus stated the classic test in these cases:

"What degree of resemblance is necessary to constitute an infringement is incapable of exact definition, as applicable to all cases. All that courts of justice can do, in that regard, is to say that no trader can adopt a trade-mark so resembling that of another trader, as that ordinary purchasers, buying with ordinary caution are likely to be misled."

■ In determining infringement, it is not necessary to prove actual confusion. The test is whether there is likelihood of confusion. Noll v. Rinex Laboratories Co., D.C., 25 F.Supp. 239, 240, Mershon Co. v. Pachmayr, 9 Cir., 220 F. 2d 879. Nevertheless, at the trial below,

Williams did prove one instance of actual confusion where a clerk handed Mr. Charles Trotter "Railroad" socks when he asked for "Trainman" socks. The District Court excluded additional evidence offered by Williams relating to other confusion in the trade.

See, also, National Nu Grape Co. v. Guest, D.C., 69 F.Supp. 863, affirmed 10 Cir., 164 F.2d 874, certiorari denied 333 U.S. 874, 68 S.Ct. 903, 92 L.Ed. 1150; Crawford-Austin Manufacturing Co. v. Clifton Manufacturing Co., D.C., 25 F.2d 976, affirmed 5 Cir., 30 F.2d 392; Gehl v. Hebe Co., 7 Cir., 276 F. 271; Lone Ranger, Inc., v. Currey, D.C., 79 F.Supp. 190; Plough, Inc., v. Intercity Oil Co., D.C., 26 F.Supp. 978.

We think there is a clear likeness between the word "Railroad" used here by Williams and the word "Trainmen" employed by Lykens. In Holeproof Hosiery Co. v. Fitts, C.C., 167 F. 378, as to hosiery, "No-Hole" was held to be too close to "Holeproof." In Wonder Manufacturing Co. v. Block, 9 Cir., 249 F. 748, "Wonder" was decided to convey the same idea as "Wizard". "Wearever" or "Everwear" was declared to simulate "Everlasting" in Aluminum Cooking Utensil Co. v. National Aluminum Works, D.C., 226 F. 815. And in Kraft-Phenix Cheese Corporation v. R. E. Robertson, Inc., D.C., 9 F.Supp. 125, the court would not permit "Wonder Mix" to be used when contrasted with "Miracle Whip."

In his opinion below, the District Judge stated, 135 F.Supp. 213, 217:

"After a careful and painstaking study of the label, the contents, markings, get up and the over all appearance of each, I come up with the conclusion that there is no similarity in the two labels and that no confusion would likely result to a purchaser who would exercise ordinary care and prudence".

With this we cannot agree.

· We think the District Judge laid too much stress on the ocular comparison of the packages of Williams and Lykens, when laid side by side. The test here is

not *solely* such a juxtapositional comparison. The whole background of the case must be considered. Yet we do find here striking similarity between the two packages, in which the socks of Williams and those of Lykens are sold, in color, shape and general pattern.

In Avrick v. Rockmont Envelope Co., 10 Cir., 155 F.2d 568, 572–573, Circuit Judge Murrah declared:

"It is contended that the trial court merely made a side by side visual comparison of the two specimens, and judged the question of infringement solely by the reaction of his trained mind to such comparison. It is not the distinguishing details manifest by ocular comparison in juxtaposition which determines confusing similarity, the test is more objective than that. It is the total effect produced by the designation in the mind of the ordinary purchaser, exercising due care in the market place. A prospective purchaser does not ordinarily carry a sample or specimen of the article he knows well enough to call by its trade name, he necessarily depends upon the mental picture of that which symbolizes origin and ownership of the thing desired."

■ A careful study of the entire record here convinces us that the conduct of Lykens cannot be explained by the long arm of coincidence. On the contrary, we think there was a clear attempt by Lykens "to get under the umbrella" of Williams. In our view, the use by Lykens of "Trainman" as contrasted with "Railroad", the use of a picture of a train by Lykens and the similarity between the Williams package and that of Lykens, lead us to the conclusion that Lykens has both infringed the trademark of Williams and has been guilty of unfair competition.

Accordingly, the judgment of the District Court must be reversed and the case is remanded to that court with instructions to issue the injunction sought by Williams and for such other and further relief as may be consistent with this opinion.

Reversed and remanded.