SIMMONS COMPANY, Plaintiff,

v.

SOUTHERN SPRING BED COMPANY,
and
H. H. Jones Furniture Company,
Defendants.

Civ. C–55–WS–58.

United States District Court
M. D. North Carolina.
May 19, 1959.

Womble, Carlyle, Sandridge & Rice, Winston Salem, N. C., Soans, Anderson, Luedeka & Fitch, Chicago, Ill., for plaintiff.

Vaughn, Hudson, Ferrell & Carter, Winston Salem, N. C., Smith, Kilpatrick, Cody, Rogers & McClatchey, Atlanta, Ga., Archie Elledge, Winston Salem, N. C., for defendant.

HAYES, District Judge.

The issues at the trial, narrowed down until plaintiff waived any claim for damages; the defendant disclaimed any intention of using "Back Care" or "Built-in-Bedboard" as any part of its advertising or insignia on its mattress, but it did not want to be enjoined.

The Court adopted, with some modifications, the findings of fact and conclusions of law submitted by the plaintiff, rejecting those submitted by the defendants.

The suit was instituted to restrain defendants from using, in connection with their mattress, the trade mark "Back Care" or slogan "Built-in-Bedboard" and for damages.

The plaintiff is a well-established manufacturer of bedding of which Simmons Beauty Rest Mattress is its most famous product. The plaintiff, knowing of a large demand for a different type of sleeping device for persons with "low" back trouble, and believing that something more comfortable than a hard board for such sufferers could be made,

launched a movement which culminated in a mattress with a plywood board with coil springs on either side which would provide the necessary stiffness but supply more comfort than the plain bed board. It consulted surgeons who specialize in the treatment of back ailments, secured their expert opinions, made elaborate tests and, after finding its mattress met the need, produced, and exhibited at the January, 1958, Chicago Furniture Market this mattress as the Back Care Mattress with Built-in-Bedboard. It procured advertising for its product at a cost of approximately $500,000 in the leading journals and trade magazines in early 1958, in all of which Back Care and Built-in-Bedboard were prominently exhibited.

The defendant, Southern Spring Bed Company, also manufactures bedding. When it became aware of plaintiff's product exhibited at Chicago on January 6, 1958, it virtually copied plaintiff's mattress and exhibited samples at the Atlanta Furniture Market on January 13, 1958. The labels prominently portrayed "Built in Bedboard" and "Scientifically designed and constructed for Those Who Need Bedboard Support". It published a general sales bulletin containing "Bedboard Mattress and Box Spring with Built in Bedboard", "the newest and hottest thing in our Mattress line". It also exhibited its mattress, under similar conditions, at the High Point Furniture Market which opened about January 21, 1958.

The plaintiff secured favorable response from purchasers, including R. H. Macy and Company, but the defendant's mattress and similarity of name and construction caused great confusion and resulted in some cancellations of orders to plaintiff.

A complaint was made by plaintiff to the officers of defendant and although defendant desisted from using "Back Care" and "Built-in-Bedboard", through its counsel, it contended that the terms relied on by plaintiff were descriptive and were not legally capable of becoming the exclusive property of plaintiff.

The defendant, H. H. Jones Furniture Co., is a retailer which sells its co-defendant's products. The manager of the retail store, with the approval of the manufacturer's sales manager, published an advertisement in the Winston Salem Sentinel and in the Winston Salem Journal, February 28 and March 1, 1958, respectively, containing these statements:

"Now You Can Have Back Care
The Kind Your Doctor Approved
At A New Low Price
Save $30.00
$49.95
Matching Box Spring At $49.95
Has 624 Resilient Coils
With Built-In-Bedboard
Fully Guaranteed. A Scientific Construction That Makes Other Posture Mattresses Out Of Date".

The defendants cite many cases in support of their position, the best of which is Bliss, Fabyan & Co. v. Aileen Mills, Inc., 4 Cir., 25 F.2d 370. It is there held that a manufacturer has no right to the exclusive use of a descriptive word in connection with his goods, and if nevertheless he adopts such a trade mark, he himself is largely to blame for the confusion which ensues when other manufacturers, with equal right adopt similar terms to describe their products.

However, the words "Back Care", when used in connection with a mattress, are not so descriptive in nature as to come within the condemnation of the Bliss, Fabyan & Co. case above. These words could be descriptive of a variety of things and of use. It would be very technical to say that the words "Back Care" are not capable of a valid trade mark. The statutory definition is: "The term 'trade-mark' includes any word, name, symbol, or device or any combination thereof adopted and used by a manufacturer or merchant to identify his goods and distinguish them from

those manufactured or sold by others". 15 U.S.C.A. § 1127. Back Care may relate to the place or position of the back, but it does not exclude other meanings, nor describe a mattress without more. When considered in the light of what is said in Dwight S. Williams Co. v. Lykens Hosiery Mills, 4 Cir., 233 F.2d 398, and the authorities cited therein, it is our view that the words "Back Care" are sufficiently technical to constitute a trade mark.

The plaintiff's slogan, "Built-in-Bedboard", was not known in the mattress industry. A board had been used on a mattress and under springs, but the idea of a board built inside a mattress between two sets of coil springs was new and certainly not known in the trade until plaintiff introduced it after several months of investigation and development, together with the extensive advertising. When it entered the market in early 1958, it was known as a Simmons product. The purchasing public knew that the new Simmons mattress was promoted as Back Care and Built-in-Bedboard. The consuming public would likely think it was getting the same article if it was called Back Care or Built-in-Bedboard.

It is true that plaintiff had not secured a registered trade mark for Back Care. The fact remains that it expended approximately half a million dollars in the early part of 1958 to promote the sales and in that year its sales exceeded 2¼ million dollars. The defendant manufacturer, with unusual haste, copied plaintiff's trade mark and slogan and sought to harvest where it had not sown, to garner the profits from plaintiff's expenditures. If its behavior does not constitute unfair competition, it would be difficult to define what is unfair competition. Maternally Yours Inc. v. Your Maternity Shop, 2 Cir., 234 F. 2d 538. While plaintiff's product had not been on the market long, its extensive advertising and aggregate sales are to be considered. Barton v. Rex-Oil Co., Inc., 3 Cir., 2 F.2d 402, 40 A.L.R. 424.

It is insisted by defendants that plaintiff should be denied the assistance of a court of equity because of unclean hands; that it advertised its mattress as the first built in board when one Zofnass secured a patent before 1940 and sold a few to the Army. However, this never became known to the industry. It is also claimed that the warning published by plaintiff making threats against anyone invading its rights deprives plaintiff of equitable relief. There is no merit in these contentions. The wrongful copying by defendant of plaintiff's product, its trade mark and slogan justified the warning and the defendants are in no position to complain. Adriance, Platt & Co. v. National Harrow Co., 2 Cir., 121 F. 827.

The injunction would not issue had it not been the continued contention of the defendant that plaintiff acquired no right to the exclusive use of "Back Care" and "Built-in-Bedboard". Saxlehner v. Eisner, 2 Cir., 147 F. 189.

The Court will not allow any counsel fees to plaintiff because the suit was instituted instantly when defendant was seeking information of plaintiff in an effort to refrain from doing anything which plaintiff would show defendant had no right to do. Let the decree be entered in accordance with these views.