## VICTOR–AMERICAN FUEL CO. v. HUER-FANO AGENCY CO. et al.

(District Court, D. Colorado. April 30, 1926.)

No. 7794.

**1. Trade-marks and trade-names and unfair competition ⊚═16, 17.**

Round red labels attached to lumps of coal, as respects color and shape, cannot be exclusively appropriated as trade-marks or symbols.

**2. Trade-marks and trade-names and unfair competition ⊚═60.**

Infringing label must be likely to deceive ordinary observer exercising ordinary care, and eye is best test of this.

**3. Trade-marks and trade-names and unfair competition ⊚═60—Defendants' labels, attached to lumps of coal and used in advertising, held not deceptively similar to plaintiff's similar labels.**

Round labels, which defendants attached to lumps of coal and used in advertising, divided horizontally by word "Haco," with "Colorado" above, and "Coals" below in white letters on red background, held not deceptively similar to plaintiffs' similar labels, having figure of shovel full of coal, through center at angle of 45 degrees, with various slogans in different type than defendants, and, in absence of evidence of fraud or loss of business, due to confusion caused thereby, will not be enjoined.

**4. Trade-marks and trade-names and unfair competition ⊚═60.**

Even if complainant was first to attach labels to lumps of coal, a competitor cannot be restrained from doing likewise.

In Equity. Suit by the Victor-American Fuel Company against the Huerfano Agency Company and others. Decree for plaintiff for part only of relief sought.

Kenaz Huffman, of Denver, Colo. (Frank E. Gove, of Denver, Colo., on the brief), for plaintiff.

Forrest C. Northcutt, of Denver, Colo. (Jesse G. Northcutt, of Denver, Colo., on the brief), for defendants.

SYMES, District Judge. The complainant has for many years produced coal in large quantities from its mines, located in Colorado. It markets its product in Denver and Eastern Colorado, Kansas, Nebraska, South Dakota, Iowa, the larger part of Texas, and parts of Oklahoma and New Mexico. It also makes some shipments to Los Angeles, San Francisco, Pasadena, and Helena, Mont. In 1916 it adopted, and has since used, certain trade-marks and labels affixed to its coal to identify the same, and has directly, and through its dealers, expended considerable sums for advertising. As a result thereof complainant claims to have built up an extended and valuable trade, and alleges that its product has become known throughout its territory as "labeled coal," and is so ordered by dealers and consumers. It charges that the defendants, who are likewise engaged in the production and marketing of coal, have adopted and used in the complainant's territory since 1921 trade-marks and labels similar to those of the complainant's, and have also labeled their coal; that dealers and consumers are deceived into the belief that the coal so sold by the defendants is, or might be, the product of the complainant.

The defendants deny that the complainant has any exclusive right in its trade-marks, trade-names, or symbols, and, while admitting that it labels its coal as charged, deny that the complainant was the first to label coal in the manner alleged, or that it has any exclusive right so to do. It further denies that its labels or slogans are so similar to those of complainant as to deceive the public, or that retail dealers or consumers have at any time been confused or deceived by reason of the acts or conduct of the defendants.

The case has been fully argued, and the court favored with exhaustive briefs. I have digested the evidence, examined the authorities cited and others available, and reached certain definite conclusions on the essential points in issue. I will state them very briefly. Both briefs agree upon certain rules of the law of unfair competition that I hereafter refer to. This renders citation of authorities unnecessary.

The complainant asserts an exclusive right within its territory to place labels or stickers on coal as it goes to market, and also an exclusive right to advertise and sell the same as "labeled coal." Exhibits A to J, inclusive, attached to the bill, are the complainant's labels. Their predominating features are: The round shape, red as the predominating color, and the figure of a shovel full of coal dividing them through the center at an angle of 45 degrees. The minor features are the white circle, or band, around the edge, with the slogan, "This label assures you this is genuine Maitland coal," etc., in small, black letters. This term, or slogan, varies according to the different mines of the complainant, such as the Maitland, Sunshine, Chandler, etc. Some, but not all, of the labels, bear the name of the complainant.

The defendants' labels (Exhibits 1 to 3, inclusive, and Exhibit 5) are likewise round, and the predominating color is red. Here the similarity ceases. The defendants' label is divided horizontally by the word "Haco,"

with the geographical descriptive word "Colorado" above, and the word "Coals" below, in white letters on the red background; the style or type of lettering being very unusual, and wholly dissimilar in size and appearance to that used by complainant.

At the outset it may be said that all the parties mine, sort, and prepare their coal according to the latest and most approved methods. As the coal is loaded into the cars for shipment, the labels are affixed to a considerable number of lumps. The complainant uses about 50 labels per ton, additional ones being pasted on the cars. Both sets of labels are comparatively small. For this reason the wording on them can only be distinguished by a close-up examination, which neither their consumers nor the public ever give it; the undisputed evidence of the distributors being that coal as a rule is ordered by phone, and delivered into the consumer's bin before he seeks, or has an opportunity, to examine it; also, as a practical matter, it is not long before the labels, due to dust and handling, become indistinguishable as far as the lettering is concerned.

As a result of their experiments, both parties agree that red is the most practical color that can be used. Obviously, a black label could not be seen, and a white one would soon become dirty. The evidence further shows that a round label is the only kind that will adhere to the irregular surface of a lump satisfactorily. For these reasons, all labeled coal looks very much alike as it moves from the mine, through the dealer's yard, into the consumer's furnace, and the public has no opportunity to be impressed by any particular language or slogan that the label might bear. So that the features of both labels that come to the attention of the public, who see the products of the complainant and defendants, are the similarity of color and shape; so, for the time being, we may eliminate any discussion of the slogans or words printed on them.

[1] It seems to be the rule that colors of themselves cannot be appropriated as trade-marks, especially when, as here, there is little, if any, choice open. It is likewise the law that a round label is not subject to exclusive adoption by reason of its shape. So, that complainant's labels, as far as these two features are concerned, lack novelty.

[2, 3] Turning, now, to another feature of the case, the evidence discloses that the labels and slogans of the complainant, in addition to being affixed to its product, are used in newspaper and other forms of advertising, such as circulars, billheads, etc., where the reader has an opportunity to note the wording. Defendants' labels are practically uniform, while those of the complainant vary more or less in size and lettering. A meticulous discussion of the various points of resemblance and difference, however, would serve no useful purpose. The rule is that the infringing label must be likely to deceive the ordinary observer, exercising ordinary care, and that the eye is the best test of this. When we put the two sets of labels side by side, or observe them the way they would appear in a newspaper, or on the advertising matter put out by the complainant, it is apparent that any one using the ordinary powers of observation would not be deceived or led to believe they were the same.

Judge Townsend, formerly of the federal bench, and an authority on the law of unfair trade, has framed the following pertinent inquiry as applicable to these cases: "Would the ordinary man, using ordinary care, be deceived?" The answer in the instant case must be in the negative. The evidence of the complainant, and of both parties, for that matter, is not of the kind or character calculated to sustain the burden of proof it has undertaken. Most of the witnesses are necessarily interested, being officers or employees. Their testimony in the main consists of their opinions and conclusions, unsupported by citation of any facts or instances that show fraud, or of loss of business due to any confusion arising in the minds of their customers, or the public generally.

[4] The evidence and the discussion in some of the authorities cited show that the practice of attaching round labels to coal existed before 1916. But granting, for the minute, that the complainant was the first to adopt the practice of labeling coal, I doubt whether a competitor can be restrained from doing likewise. Labeling of articles of commerce, so as to identify the product or producer, has long been a common practice, and as far as I am advised has never been thought to be the subject of a monopoly. What complainant really did when it first stuck labels on its coal was to extend this common practice to another common article of trade. Judge Townsend, the authority already cited, says that the law of trade-marks and unfair trade has developed on the assumption that a name or device, used in an arbitrary or fanciful manner as a mark of identification of one's goods, is property which should be protected. Therefore the complainant will be secured in the exclusive use of its own fanci-

ful device or wording, and its own name, but not in the shape or color of its label, or the practice of labeling coal.

A decree in accordance with these views may be submitted.