DRIVERLESS CAR COMPANY v. GLESSNER-THORNBERRY
DRIVERLESS CAR COMPANY.

Decided January 23, 1928.

Action to enjoin use of a trade name.   Judgment of
dismissal.

*Affirmed.*

1.   TRADE NAMES—*Unfair Competition—Fraud.*   In an action to enjoin
     the use of a trade name, the controlling test is whether or not the
     later selection of a similar name is likely to deceive the ordinary
     customer or lead him to believe that in dealing with the later, he
     is actually transacting business with the former, dealer.   If there
     is any fraudulent conduct resulting in injury, such as deceit in
     the later selection, liability attaches.

2.   *Unfair Competition.* The same relief in equity that is given to prevent improper use of a trade name is given for unfair competition, and the same kind of relief is afforded to prevent improper use of a corporate name. Fraudulent intent need not be shown in either kind of case where the necessary or probable effect is to deceive the public and pass off his goods as those of plaintiff. Fraudulent intent, however, in close cases is important and sometimes decisive.

3.   *"Driverless."* In an action to enjoin the use of the word "driverless" as a trade name, it is held, that in the absence of actual fraud or intent to deceive, plaintiff did not acquire the right to the exclusive use of "driverless" in its corporate name, because it was merely generic or descriptive of the particular business in which both parties were engaged.

4.   WORDS AND PHRASES—*"Driverless."* "Driverless" is a combination of "driver" and "less" and means without a driver.

5.   TRADE NAMES—*Driverless.* The mere fact that a party was the first in a community to use the word "driverless" as descriptive of his business of hiring automobiles without a driver, did not justify his contention that he had the right to the use of the word to the exclusion of all others transacting the same kind of business.

6.   *Estoppel.* In an action to enjoin the use of a trade name, plaintiff having acquiesced in the use of the name by others for more than two years without objection, was not in position to maintain the action.

7.   *"Driverless."* In an action concerning the use of the word "driverless" in corporate names, it is held that neither party has the exclusive right to its use.

*Error to the District Court of the City and County of Denver, Hon. George F. Dunklee, Judge.*

Mr. JAMES R. HOFFMAN, Mr. CARLOS A. RICHARDSON, Mr. JAMES J. ROACH, for plaintiff in error.

Mr. CLAUDE W. BLAKE, for defendant in error.

*En Banc.*

MR. JUSTICE CAMPBELL delivered the opinion of the court.

THE plaintiff, The Driverless Car Company, incorporated under our general incorporation act April 14, 1924, to engage, inter alia, in the business of renting and hiring automobiles and motor vehicles without a driver, brought this action to restrain the defendant, The Glessner-Thornberry Driverless Car Company, incorporated under the same act, January 28, 1926, from using in its corporate name the word "driverless" on the ground that plaintiff had, under the common-law doctrine of unfair competition, and under section 2245, C. L. 1921 —which prohibits the filing by, or receiving for, any domestic corporation of a name identical with, or similar to, or liable to be mistaken for, the name of any other pre-existing corporation—thereby acquired the right to the exclusive use of such term in its corporate name. The defendant in its answer denied that such right accrued to the plaintiff, though the two companies were doing business in the same city and each used the word "driverless" as a part of its corporate name, the plaintiff's use being earlier. The answer also alleges laches upon the part of the plaintiff and acquiescence in the use by the defendant and other corporations and individuals in the city of Denver of the term for so long a time that plaintiff may not be heard now to assert the right to the exclusive use of the word "driverless." Defendant denies that it committed any fraud or practiced any deceit or that its conduct in any respect was such as to lead the public to believe that in dealing with the defendant it was dealing with the plaintiff. At the close of the plaintiff's evidence, the trial court, on defendant's motion, entered a nonsuit and dismissed the action at plaintiff's costs and the latter is here with its writ to review that judgment.

We think the judgment of the district court is right and must be affirmed. It is doubtful if the provision of our statute prohibiting a later corporation from selecting or using a name so similar to that of an earlier corporation as to be misleading or confusing, or to be mistaken

for the name of the former, adds anything of substantial force to the common-law doctrine in relation to trade names or trade-marks or unfair competition. The test to be applied in such cases, and the controlling one, is whether or not the later selection of such a name is likely to deceive the ordinary customer, or lead him to believe that in dealing with the later, he is actually transacting business with the former, trader. Of course, if there is any fraudulent conduct, resulting in injury, such as deceit in the later selection, liability attaches, but in the absence of any proof thereof the courts will not interfere to grant relief to the original trader upon complaint that a later trader has selected the same or a similar name, either corporate or individual, under which to do business, unless the probable or likely effect thereof is to enable the later, to palm off his goods upon a purchaser of ordinary ability as the goods of the original trader.

The same relief in equity that is given to prevent improper use of a trade name is given for unfair competition, and the same kind of relief is afforded to prevent improper use of a corporate name. Fraudulent intent need not be shown in either kind of case where the necessary or probable effect or tendency of a defendant's conduct is to deceive the public and pass off his goods or business as and for that of the plaintiff, especially where the preventive relief sought is against continuance of such conduct. Fraudulent intent, however, in close cases is important and sometimes decisive. 38 Cyc. p. 783, et seq. Doubtless in view of the rule thus announced, the plaintiff in its complaint charged fraud and deceit on the part of the defendant by saying that the defendant adopted the term "driverless" as part of its corporate name for the purpose of pirating plaintiff's business and to get the same, or part thereof, for itself, by reason of the similarity of its name to that of the plaintiff and thereby has succeeded in deceiving the public and plaintiff's customers, and has secured profits that otherwise would have come to the plaintiff. Mr. Reynolds, plain-

tiff's president, testified that he could not say that the object of the defendant company in using "driverless" in its corporate name was deceit, or that the defendant had purposely tried to deceive, or had deceived, the plaintiff's customers; but he said that the use by defendant and the other three competing companies in Denver of the term, was to get business under the plaintiff's name and the benefit of its advertising. This testimony was merely the conclusion of the witness. Neither he nor any witness for plaintiff testified to any fact or facts even tending to show deceit or fraud or that the defendant was using any unfair means to injure plaintiff's business. Therefore, we say, as the trial court found, there is no element of fraud in this case to turn the balance, even if the case were a close one. The question then is, and it is pivotal, has the plaintiff, as the first dealer or trader to use the same in its corporate name, acquired the right to the exclusive use thereof in Denver of the word "driverless"?

The question is one of first impression with us. There are many cases in England and the United States directly or indirectly pertinent. One of them upon which plaintiff relies, is *McLean v. Fleming,* 96 U. S. 245, 24 L. Ed. 828. There are some observations in the opinion tending to sustain plaintiff's contention, but the opinion as a whole does not. That was a suit by the plaintiff Fleming against James H. McLean to restrain the defendant from an alleged infringement of plaintiff's trade-mark for liver pills. Fleming's assignor, Dr. Charles McLane of Virginia, in 1834, made and sold liver pills putting them in wooden boxes labeled: "Dr. McLane's Liver Pills." James H. McLane, the defendant, commenced at St. Louis, Mo., in 1849, to manufacture proprietary medicines and two years later to manufacture and sell liver pills under the name of "Dr. McLean's Universal Pills." Some variations of these labels were made from time to time but are immaterial. The facts as found by the trial court, and as approved by the Supreme Court, are that

the respective names of the pills are idem sonans in the usual pronunciation; that the form of the box used by the respective parties containing the pills and the general appearance of the wrappers around the boxes, the color of the labels and the wax impression on the top of the boxes were well-suited to divert the attention of the average buyer from any careful examination and were of a character to mislead and deceive, and, therefore, the court rightly restrained the defendants as prayed, but on account of plaintiff's laches in bringing the suit, denied an accounting for profits. The Supreme Court thus said: "Two trade-marks are substantially the same in legal contemplation, if the resemblance is such as to deceive an ordinary purchaser giving such attention to the same as such a purchaser usually gives, and to cause him to purchase the one supposing it to be the other." McLean v. Fleming is not authority for the plaintiff.

Another case whose authority is invoked is *Cab Company v. Creasman,* 185 N. C. 551, 117 S. E. 787, 28 A. L. R. 109. In the trial court a temporary order was issued restraining the defendant from using on the streets of Asheville, N. C., for public hire any automobile or taxi-cab of the defendant painted yellow, and made to resemble or imitate in form and color the taxicabs then and theretofore in use by the plaintiff, The Yellow Cab Company. On a subsequent hearing there was a judgment which dissolved the preliminary order and plaintiff perfected an apeal. The Supreme Court set aside the judgment of the trial court and directed that the preliminary order should be continued until the final hearing below. In the course of its opinion, however, the Supreme Court said that since there was evidence in plaintiff's behalf upon the hearing tending to show that the color design for the plaintiff's automobiles was a yellow body with distinctive markings in black, that had theretofore not been used in the city, and which became well-known to the public which patronized the plaintiff's lines because of its fair dealings and business methods, that

the methods of its competitors were discriminatory and unfair in that the defendant, who had for a long time been running public automobiles of a grey color put into its service two automobiles similar in design to the plaintiff's cars and of such similar color and markings that the use of the defendant's cars were misleading, the difference in their appearance being scarcely discernible by ordinary observation. What the final decision in this case was we are not advised, but the foregoing statement clearly differentiates that case from the one here. That decision was specifically based upon the proposition that defendant's methods of doing business were unfair and discriminatory, the natural tendency of which was to make people believe, in using the defendant's cars, that they were getting the service of the plaintiff. That case is unlike the case we are considering and is not authority here.

*Saunders System Atlantic Company v. Drive It Yourself Company of Georgia,* 158 Ga. 1, 123 S. E. 132, is chiefly relied upon by the plaintiff. There the Supreme Court of Georgia protected the "Drive It Yourself Company of Georgia" against the use of the phrase "Drive It Yourself" by the Saunders System Atlanta Company, of which latter company Warwick Saunders, the organizer of the "Drive It Yourself System," was president. The Georgia court grounded its decision upon facts which disclosed to its satisfaction that it was a case of unfair competition because the defendant by his conduct succeeded in palming off his business as plaintiff's business, which, of course, was to deceive the public in dealing with the defendant, believing that it was dealing with the plaintiff. The court said that it applied the doctrine especially because only preventive relief was asked against the continuance of the wrong. In commenting upon this case we think that the Supreme Court of Maryland, in *Drive It Yourself Company v. James D. North, et al.,* 148 Md. 609, 130 Atl. 57, properly distinguished the doctrine there from a case like the one now

before us in that the Georgia decision rests on certain findings of fact concerning the secondary meaning of the phrase: "Drive It Yourself Company of Atlanta" and the deceptive conduct of the Saunders Company, while the Maryland case, which is quite like the one now before us, upon a different statement of facts from those in the Georgia case, held there was no secondary meaning to the phrase in Baltimore and no deception was practiced. So here, in the case now under consideration, as found by the trial court, the word "Driverless" has not acquired in the mind of the Denver public a secondary meaning as denoting the business of any particular company and, therefore, in the absence of actual fraud or intent to deceive, plaintiff did not acquire the right to the exclusive use in its corporate name of "Driverless" because the same is merely generic or descriptive of the particular business in which both of these companies are engaged. The Maryland case we think is the same kind of a case as that now before us. Where, as here, there is no actual fraud or intent to deceive, "driverless" has not acquired in the mind of the public a secondary meaning. It is purely a generic term. True, the plaintiff says that "driverless" is not in any standard dictionary of the English language and the term was coined by its predecessor, "The Driverless Ford Car Company," to whose rights in the use of the name, to the exclusion of all other dealers, plaintiff has by contract succeeded. We have not examined all the standard authorities but Webster's Dictionary does not contain the word. It does, however, contain the two words: "driver" and "less," the combination of which constitutes the word "driverless." "Driver" is a noun; "less" is an adjective. Webster says: "less" is "A privative adjective suffix, denoting: (a) With nouns, without, destitute of, not having." The word "driverless," therefore, means "without a driver." One of the illustrations Webster gives is "childless." Webster defines "child" but gives no definition of "childless," yet English-speaking people

frequently use the word "childless." Plaintiff, we think, is wrong in saying that it coined or first used the word "driverless," and, therefore, has the right to the exclusive use thereof in its corporate name. "Driverless" may not be found in standard dictionaries but the two words of which it is composed are in all of them. The mere fact that plaintiff was the first in Denver to use the word "driverless" as descriptive of its business of hiring automobiles without a driver in this community, does not justify its contention that thereby it has appropriated a word by combining two different words, which are found in the dictionary, and, therefore, has the exclusive right forever thereafter to use the same to the exclusion of all other dealers in transacting its business in letting automobiles for hire without a driver. The word itself, as the plaintiff expressly alleges in its complaint, is descriptive of such business. In the absence of actual fraud or deceit, and there is no proof thereof, defendant's conduct has worked no legal injury on plaintiff. Other authorities in support of this conclusion are: *Iowa Auto Market v. Auto Market & Exchange,* 197 Iowa 420, 197 N. W. 321; *Hygeia Water Ice Co. v. N. Y. Hygeia Ice Co.,* 140 N. Y. 94, 35 N. E. 417; *Elgin Butter Co. v. Elgin Creamery Co.,* 155 Ill. 127, 40 N. E. 616; *Howe Scale Co. v. Wyckoff, Seamens, etc.,* 198 U. S. 118, 140, 25 Sup. Ct. 609, 49 L. Ed. 972; *National Biscuit Co. v. Baker,* 95 Fed. 135; Nims on Unfair Competition (2d Ed.), pp. 13, 14, 67; footnote, pp. 707, 708; *Ford v. Foster,* L. R. 7 Chan. App. Cas. 611.

*Auto Parts Company v. Silverstein, et al.,* 211 Ill. App. 436, is easily distinguished from the case in hand. There the use by a later dealer of a name similar to that of an earlier dealer, was held to constitute unfair competition, there being evidence that confusion resulted and no evidence of an innocent intent of making use of a name so similar. In the case at bar no practical confusion resulted. There is no evidence at all that any person was led to believe that in dealing with the defendant he

supposed or had any reason to suppose that he was deal-
ing with the plaintiff.  No evidence of fraud or deceit;
no resemblance between the respective places of the
parties that would or could induce an ordinary person
to believe that in entering the defendant's place he was
entering the place of business of the plaintiff.  The
plaintiff had come to use in all its advertising in the
telephone directory, on its letterheads, on its sign upon
its business building, the name "Reynolds," after its
president, in connection with the corporate name,
"Driverless Car Company."  There was no similarity
in the appearance of the respective fronts of the two
buildings in which the parties carried on separate busi-
ness.  Defendant used the name of its organizers,
"Glessner-Thornberry" in connection with "Driverless
Car Company."  Indeed, the fact that plaintiff in its sign
on the front of its place of business, painted in the word
"Reynolds" in small and inconspicuous letters and
"Driverless Car Co." in large broad letters, and defend-
ant on its sign painted in "Glessner-Thornberry" in
large and broad letters and "Driverless Car Co." in
smaller letters, would at once attract the attention of the
public and enable it readily to detect and conclude that
the two places of business were conducted by two differ-
ent parties.  And it is also fitting to observe that if the
inference to be drawn from these different signs is that
there was an intent by one of the parties to deceive or
mislead the public, the plaintiff, rather than defendant,
is the guilty party.

Aside from all this the plaintiff, after it was aware that
three rivals in business other than the defendant, had
used the word "driverless" in their corporate names for
more than two years, took no step whatever by way of
remonstrance or otherwise to object to such use.  If it
was not guilty of laches it acquiesced for more than two
years in the use by all four of these latter dealers in using
the term "driverless."  Conferences at different times
were held by the five dealers in Denver, including the

plaintiff and the defendant, with a view to protect themselves against further alleged encroachments or infringements of their respective corporate names, in all of which the term "driverless" appeared. In so far as there was any conflict in the testimony, the court's findings were in favor of the defendant. Aside from this we are convinced that the plaintiff upon the evidence which it produced, was entitled to no relief. The case is simply one where both parties have used—the plaintiff first, the defendant afterwards—as a part of their corporate name, a word of generic significance, properly descriptive of their business. Neither has an exclusive right to its use. In no event is the plaintiff entitled to be heard with a request for relief in the absence of fraud committed, or deceit practiced, by the defendant, and there is none, which is calculated to lead an ordinary customer to believe that in dealing with the defendant he was dealing with the plaintiff. The judgment is therefore affirmed.

MR. JUSTICE SHEAFOR not participating.