STANDARD OILSHARES, INC., a corporation of the State of Delaware,

*vs.*

STANDARD OIL GROUP, INC., a corporation of the State of Delaware.

*New Castle, April 2, 1930.*

114

*Charles F. Curley, John Sherman Myers, Frederick W. R. Pride,* and *Joseph A. Barrett,* of the firm of Hughes, Schurman & Dwight, of New York City, for complainant.

*Caleb S. Layton,* of the firm of Richards, Layton & Finger, for defendant.

THE CHANCELLOR. This is a bill to restrain unfair competition. The complainant and defendant are engaged in a similar business. Each conducts an investment trust of the fixed type. Each sells to the public participating shares in Standard Oil stocks which are deposited with a trustee under an elaborate trust agreement defining the rights of the participating owners. The participating shares are evidenced by certificates. The complainant whose corporate name is Standard Oilshares, Inc., sponsors and markets participating certificates which it calls Trustee Standard Oilshares; the defendant, whose corporate name is Standard Oil Group, Inc., sponsors and markets participating certificates which it calls Standard Oil Trust Shares. In all essential respects both companies are engaged in marketing a commodity, the commodity not being a physical thing, but an intangible thing in the form of rights or participations. The commodities while similar are not the same, for while both companies sell participating shares in Standard Oil stocks, yet in the portfolio which contains the underlying securities of the complainant's commodity only thirty-one of the Standard Oil group are represented, whereas in the portfolio which contains the underlying securities of the defendant's commodity all of the thirty-six companies in the Standard Oil group are represented. It is manifest that the price at which the trust shares may be marketed and traded in is influenced by the character of the grouping of the stocks which underlie them. This is why it is that the defendant's Standard Oil Trust Shares sell at a lower price than

the complainant's Trustee Standard Oilshares. The circumstance, however, that the defendant has so devised a grouping of Standard Oil stocks that participations therein sell more advantageously than do the participations in the grouping devised by the complainant, does not seem to me to be of any moment in considering the question of whether the defendant is guilty of unfair competition, for if the defendant otherwise has the right to continue to do the business it does under the names it uses, I know of no principle by which it would be compelled to work out its price ranges on a parity with the complainant's. This is especially so when it is remembered that the portfolios of the defendant are constituted differently from those of the complainant, and the things sold are therefore different in character. I am unable, therefore, to attach any significance to the mere marketing of its securities by the defendant below those of the complainant, as the solicitors for the complainant seem disposed to do.

The substantial questions in this case have to do with names. The first question is whether or not in view of the nature of the business conducted by the parties, the defendant has chosen a name for its so-called commodity, viz., Standard Oil Trust Shares which is so close an imitation of the name of the complainant's commodity, viz., Trustee Standard Oilshares, as to warrant a court of equity in restraining the use of such name in competition with the complainant. The second question is whether the defendant has a right to use the corporate name Standard Oil Group, Inc., in carrying on a business similar in its general outlines to the business carried on by the complainant under the corporate name of Standard Oilshares, Inc., prior to the defendant's existence. In other words, has the defendant unlawfully imitated the corporate name of the complainant? These questions will be considered in the order of their statement.

First, then, as to the names of the rival securities. It is elementary that the law of unfair competition will not permit one person to adopt any name, mark or device which will enable him to pass off his goods as those of another, or which may be reasonably calculated to mislead the public into confusing the origin of the defendant's goods with the origin of the complainant's.

But there are certain qualifications of this elementary principle which are as well settled as the principle itself. When it is said that no man may use another's name or mark, the converse connotation is that the present user of such name or mark has an exclusive trade right to its enjoyment. Where the right to such exclusive use is recognized, to that extent an approach to a monopoly is countenanced. But so valuable does the law consider the business which an individual has built up and identified with a name, mark or device at the expenditure of much time, labor and money, and which is the sign-manuel of a particular quality or superior excellence of product attributable to the producer's efforts, that notwithstanding the general policy of the law which abhors monopoly and favors the freedom of competition, any attempt by another to take away the business by imitating the name of its owner or by simulating his distinctive marks, will be enjoined. While the individual thus has rights to the use and enjoyment of a name which are to the exclusion of the public, the latter in turn has certain rights to names which no individual may pre-empt. Names that are descriptive of articles, things or occupations, names that are purely geographical, are names that are the common property of all men, and the law will not recognize the right in any individual, except under unusual circumstances, to appropriate unto himself to the exclusion of every one else the use of such names in his business. This principle was stated in *Drugs Consolidated v. Drugs Incorporated*, 16 *Del. Ch.* 240, 144 *A.* 656, without the supporting citation of authorities. The following are a few of the cases which may be referred to as fully supporting it: *Standard Paint Co. v. Trinidad Asphalt Co.*, 220 *U. S.* 446, 31 *S. Ct.* 456, 55 *L. Ed.* 536; *Shaver, et al., v. Heller & Merz Co.*, (*C. C. A.*) 108 *F.* 821, 65 *L. R. A.* 878; *Goodyear's India Rubber Glove Mfg. Co. v. Goodyear Rubber Co.*, 128 *U. S.* 598, 9 *S. Ct.* 166, 32 *L. Ed.* 535; *Howe Scale Co. v. Wyckoff, Seamans & Benedict*, 198 *U. S.* 118, 25 *S. Ct.* 609, 49 *L. Ed.* 972; *Hygeia, etc., Co. v. N. Y. Hygeia Co.*, 140 *N. Y.* 94, 35 *N. E.* 417; *Elgin Butter Co. v. Elgin Creamery Co.*, 155 *Ill.* 127, 40 *N. E.* 616; *Eastern Construction Co. v. Eastern Engineering Corp.*, 246 *N. Y.* 460, 159 *N. E.* 397; *Driverless Car Co. v. Glessner-Thornberry Driverless Car Co.*, 83 *Colo.* 262, 264

*P.* 653; *Drive It Yourself Co. v. North, et al.,* 148 *Md.* 609, 130 *A.* 57; *Title & Mtg. Guarantee Co. v. Louisiana, etc., Co.,* 143 *La.* 900, 79 *So.* 529; *Upjohn Co. v. Wm. S. Merrell Chem. Co., (C. C. A.)* 269 *F.* 209. The unusual circumstance that works an exception to this general rule consists in the fact that by public acquiescence the complainant has so appropriated the common name or descriptive term as to give it a secondary meaning identifiable with the complainant. Cases demonstrating this exception need not be cited, because the instant one does not fall within their class. On the point that descriptive terms cannot be appropriated to the exclusion of the public in the absence of a showing of such secondary meaning, the case of *Edward G. Budd Mfg. Co. v. C. R. Wilson Body Co., (D. C.)* 7 *F.* (2d) 746, seems to run counter to the overwhelming weight of authority, in which is to be found *Upjohn Co. v. Wm. S. Merrell Chem. Co., supra,* decided in the Circuit Court of Appeals of the same circuit in which the District Court is located that decided the *Edward G. Budd Mfg. Case.* The latter case, on the point now under consideration, cannot be accepted as persuasive. Of course if in that case the element of express fraudulent intent actuated the defendant, as the court may have thought from its reference to the defendant's wrongful acts, the case would stand on a different footing, and might be reconcilable with the weight of authority.

The general principle established by the cited cases is applicable here, for the name which the complainant attaches to its certificates is purely descriptive of the article sold. So also is the name which the defendant attaches to its certificates. In recent years the business of promoting investment trusts of various types has rapidly grown in this country. For courts to ignore the fact would be for them to close their eyes to what is common knowledge. Some of these trusts are general in character leaving to the managers a wide discretion in the choice of the securities that may be taken into the portfolio. Others of the fixed type, such as those now before the court, restrict the holdings to shares of a definite kind and limit the number of each that may be held in a unit. There are investment trusts that hold only bank shares, others that hold insurance shares and some that go in for oil shares generally. The parties in this cause have

chosen to confine their activities to oil shares of a specific kind which are familiarly known on the street as Standard Oil stocks. The names given to their certificates are in every sense of the word descriptive of the thing they represent. To say that because the complainant was the first to describe its commodity by words indicating that it was a share or interest in Standard Oil stocks that had been purchased and were held in trust for the certificate owners, no one else could enter a similar business and designate his commodity by appropriate words descriptive of the article sold, would be to allow to the complainant a monopolistic position in the business of selling trust participations in the Standard Oil stocks. That would appear to be unjustified, for the reason that there is nothing in the nature of the investment trust business in general, nor in the Standard Oil group of stocks in particular, that is not open to the financing enterprise of all men. It is as much the right of one man as another to embark upon the business of promoting investment trusts in the Standard Oil group of stocks and letting the public know by appropriately descriptive words that such is his business. The difficulty in the complainant's position is this, that it has seen fit to adopt a name for its commodity which is purely descriptive of that which every one else has a right to deal in. The name contains no distinguishing feature nor any background of history that indicates that the certificates it sells emanate from it alone. The case of *Shaver v. Heller & Merz Co.*, *supra*, is of particular pertinency in the present connection. In that case the terms "Ball blue" and "Wash blue" were held to be perfectly descriptive of the articles they described; that the defendant had as much right to describe its product by those phrases as had the complainant, but that inasmuch as the complainant had established for its brands of "American Wash Blue" and "American Ball Blue" a reputation among the trade as a ball blue and wash blue of its own particular make and had built up a profitable business for itself under those marks, the defendant should be enjoined from using the word "American" in competition with the complainant's trade. In that case the word "American" notwithstanding its geographical character generally exempted it from appropriation by any one, was, by reason of a secondary meaning which the

complainant's business had attributed to it when associated with "ball blue" and "wash blue," held to be a distinguishing part of the complainant's trade-mark and as such entitled to be protected from use by the defendant.

Had the complainant attached to the descriptive words of its article some distinguishing feature and by reason thereof established a reputation for the same as emanating from it, even though such distinguishing feature were generally not subject to exclusive proprietorship, its case would be different and under the principle of *Shaver v. Heller & Merz Co.*, *supra*, the defendant would be enjoined if it undertook to imitate such distinguishing feature, though its right to use the purely descriptive part of the name would not be interfered with. But such is not the situation. The complainant chose to confine the title of its article to language purely descriptive of it, and the article is such that any one as well as the complainant is free to deal in and describe in appropriately apt language.

I find it unnecessary to review the many cases cited by the complainant in the present connection. Those of them that concern registered trade-marks are manifestly beside the point, for where a mark is registered, the owner of it enjoys an exclusive property in the mere mark. The remaining cases are either cases where statutes were involved and hence were decided aside from the principles of unfair competition; or were cases where the evidence clearly showed that the complainant's use of generally non-appropriable names was protected because a secondary meaning had become attached to those names whereby the public had come to identify the complainant's goods by them. That is not the case here.

The complainant urges that confusion is bound to exist in the mind of the investing public between the identity of the complainant's certificates and those of the defendant, and has introduced some evidence which it contends demonstrates the actual existence of such confusion. I am not greatly impressed by such evidence. Such confusion, if it exists, is not such as thus far amounts to a passing off of the defendant's certificates as those of the defendant. This is conceded by the solicitors for

the complainant on their brief, for they admit that no evidence of passing off is shown.

The complainant contends that the defendant deliberately chose the name for its certificates which it did with the express design and purpose of pirating the complainant's business. The evidence adduced in support of this contention is, aside from the choice of names for the defendant and its certificates, this—that the defendant grouped the standard oil holdings in its units so as to make them sell at a cheaper price (a circumstance that I have already rejected as of any moment) and that the defendant copied *in hæc litera* the complainant's charter. The latter circumstance seems to me to be of no significance. I am aware that in *Phila. Trust, etc., Co. v. Philadelphia Trust Co., (C. C.)* 123 *F.* 534, and in *Liberty Life Assurance Soc. v. Heralds of Liberty*, 15 *Del. Ch.* 369, 138 *A.* 634, 638, a similar circumstance was noted. With respect to the *Philadelphia Trust Co. case*, I do not see why the copying of the complainant's charter by the defendant should have been allowed any weight by the court in reaching a conclusion adverse to the defendant, because the copied charter was very much in the form that any concern would have to adopt if it desired to engage in that type of business as it had a perfect right to do. I doubt if Judge Bradford in deciding that case meant to lay much emphasis on that phase of the facts. The important feature of that case was the exact copying by the defendant of the name by which the complainant had been long and familiarly known. In the *Heralds of Liberty case*, however, the copying of the complainant's charter was of more significance because by such copying the defendant, quoting from the opinion, "faithfully borrowed from the complainant its scheme of organization and its classes of officers and the exact nomenclature descriptive of each." This fact had some tendency to show that the defendant in copying the complainant's charter was doing something more than to merely set itself up in the same line of business as the complainant.

Here however there is no such inference to be drawn from the defendant's act in copying the complainant's charter. The charter of each of these parties has no significance beyond being a mere definition of corporate powers and an expression of cor-

porate objects and purposes, which any group of incorporators is at liberty to adopt. The complainant's charter has nothing peculiar in it that identifies its contents with the complainant so as to make it a fraud for any one else to copy it. Furthermore the corporate charters of concerns such as those we are here dealing with are not ordinarily circulated for public inspection and their contents are never displayed in such way as to constitute a basis for the erection of a trade-name or a goodwill. No harm is done to any corporation of any of the ordinary business types by having its corporate powers, objects and purposes copied by another. The adopted names are the important and significant features to which the public looks for identification of the corporations and the trade-marks and brands are the things looked to for identification of the product's origin.

The defendant's certificates have a name which is not identical with the complainant's. The one is "Standard Oil Trust Shares," the other "Trustee Standard Oilshares." Both names convey the idea that the purchaser of a certificate will hold an interest in Standard Oil stocks that have been deposited with a trustee, but the grouping of the words is different. In the case of the complainant's name we find a composite word "Oilshares," absent from the defendant's; in the complainant's we find the word "trust," in the defendant's "trustee"; "shares" is common to both as is "Standard"; while "Oil" and "shares" are joined together in the complainant's name, the same words are separated in the defendant's name by the word "trust." Thus while the same idea is conveyed by both, the choice of words and their sequence is different. If the defendant's certificates were named in the identical language of the complainant's, I express no opinion upon whether injunctive relief should be afforded. Of this, however, I am quite clear, that if the complainant chose to give to its certificates a name that was purely descriptive of a commodity which any one else was as much at liberty to sell as was the complainant, and chose to omit from the name everything of a non-descriptive nature, it is not in a position to successfully complain if the defendant enters the open field and differentiates its commodity to the degree the defendant has.

It is next in order to take up the second and last contention

which is that defendant's corporate name is an unlawful imitation of the complainant's name.

When the complainant and the defendant were incorporated the law of this State provided that a corporation in the selection of its name shall choose one that "shall be such as to distinguish it from any other corporation engaged in the same business, or promoting or carrying on the same objects or purposes in this State." *Revised Code* 1915, § 1919. The cases of *Drugs Consolidated, Inc., v. Drugs Incorporated*, 16 *Del. Ch.* 240, 144 *A.* 656, 657, and *Delaware Charter Co. v. Delaware Charter Service Co.*, 16 *Del. Ch.* 246, 144 *A.* 659, were decided while this statute was in force. Since those cases were decided, the statute has been amended by Act approved March 22, 1929 (36 *Del. Laws c.* 135) so as to make it read as follows: "Shall be such as to distinguish it upon the records in the office of the Secretary of State from the names of other corporations organized under the Laws of this State."

The statute as now amended is the law and no corporation theretofore created can rest any rights on the statute as it formerly existed. This is for two reasons, first, all corporate charters are held subject to amendment of the act, and secondly, the statute as it formerly existed did not assume to confer any vested rights in a name when chosen. It simply undertook to place an inhibition on corporations subsequently created. It still imposes an inhibition but the scope of it is very much narrowed. Now, the only statutory restriction in the choice of a name is that it must be distinguishable on the records in the office of the Secretary of State. I suppose, though it is not necessary to say so, that the question of distinguishableness would rest largely in the Secretary's discretion.

The present state of the law is then that in a matter involving the rivalry of corporate names, judicial cognizance of the controversy is not amplified by statutory provisions as was formerly the case (*Drugs Consolidated v. Drugs Incorporated, supra*), but rests solely in the field of general law dealing with unfair competition.

The instant case therefore in that phase of it which we are now considering, as in the other phase, is to be decided in the

light of those same general principles which govern in unfair competition cases, and which to the extent necessary have already been discussed. What I have already said applies to this branch of the case. As the names of the commodities sold by the respective parties are not identical, so also the names of the corporations are not identical. The complainant's corporate name is "*Standard Oilshares, Inc.*" and that of the defendant is "*Standard Oil Group, Inc.*" The same considerations which lead me to conclude that whatever similarity of commodity names · there might be said to exist was not sufficient in the light of the general principles that prevail in the law of unfair competition to restrain the use by the defendant of its commodity name, lead me similarly to conclude that the defendant should not be enjoined from using its corporate name. Indeed there is less reason to issue an injunction against use by the defendant of its corporate name, for the reason that the thing which circulates before the public is the certificate-commodities, the corporate sponsors remaining in the comparative background.

In the case of *American Steel Foundries v. Robertson*, 269 U. S. 372, 46 S. Ct. 160, 162, 70 L. Ed. 317, the Supreme Court of the United States said:

"Whether the name of a corporation is to be regarded as a trade-mark, a trade-name, or both, is not entirely clear under the decisions. To some extent the two terms overlap, but there is a difference, more or less definitely recognized, which is that, generally speaking, the former is applicable to the vendible commodity to which it is affixed, the latter to a business and its goodwill. * * * A corporate name seems to fall more appropriately into the latter class. But the precise difference is not often material, since the law affords protection against its appropriation in either view, upon the same fundamental principles. The effect of assuming a corporate name by a corporation under the law of its creation is to exclusively appropriate that name."

A corporate name being thus categorized as either a trade-name or trade-mark, more properly the former, the right to the exclusive use of such a name is to be tested, as before indicated, by the principles which govern in the law of unfair competition. One cannot by the device of a corporate title dignify a non-appropriable common or descriptive name with some sort of exclusiveness. Speaking of such common articles as wine, cotton

and grain, Mr. Justice Field in *Goodyear's India Rubber, etc., Co. v. Goodyear Rubber Co.*, 128 *U. S.* 598, 9 *S. Ct.* 166, 167, 32 *L. Ed.* 535, said:

"Names of such articles cannot be adopted as trade-marks, and be thereby appropriated to the exclusive right of any one; nor will the incorporation of a company in the name of an article of commerce, without other specification, create any exclusive right to the use of the name."

This court in *Drugs Consolidated v. Drugs Incorporated*, *supra*, recognized the same principle in the following excerpt:

"Many cases are cited by the defendant to the effect that if a name is such that the general law applicable to unfair competition will not recognize it as the subject of exclusive proprietorship, it cannot be made to acquire the quality of exclusiveness by merely embodying it in a corporate title. Among such cases, citing only a few, are the following: *Title & Mortgage Guarantee Co. v. Louisiana Abstract & Title Guarantee Co.*, 143 *La.* 900, 79 *So.* 529; *Hygeia Water Ice Co. v. N. Y. Hygeia Ice Co., Ltd.*, 140 *N. Y.* 94, 35 *N. E.* 417; *Driverless Car Co. v. Glessner-Thornberry Driverless Car Co.*, 83 *Colo.* 262, 264 *P.* 653; *Elgin Butter Co. v. Elgin Creamery Co.*, 155 *Ill.* 127, 40 *N. E.* 616; *Eastern Construction Co., Inc., v. Eastern Engineering Corp.*, 246 *N. Y.* 460, 159 *N. E.* 397. That the rule expressed by these cases is the law cannot be doubted."

With respect to the corporate names here involved, they both are typically descriptive. They describe either a business which the corporations are engaged in or the commodity they propose to create and sell, and there is nothing about either the business or the commodity, as I have before stated, which can be said to be open to the exclusive proprietorship of any one in particular. The titles in only a lesser degree are similar to such titles as Wine Company, Cotton Company and Grain Company which Mr. Justice Field in the case cited from 128 *U. S.* referred to as being titles that no corporation could preempt except in connection with some other specification, that is to say, as I understand his meaning, except in connection with some distinguishing feature.

The names are not identical in their grouping of words. Being descriptive as they are, for the reasons before given, the prior name has no right to an enjoyment of its descriptive field to the exclusion of the later one.

The bill will be dismissed, costs on the complainant. Let a decree be prepared accordingly.