**AVRICK et al. v. ROCKMONT ENVELOPE CO.**
No. 3227.

Circuit Court of Appeals, Tenth Circuit.
May 20, 1946.

Rehearing Denied June 14, 1946.

Leslie D. Taggart, of New York City (Elmer L. Brock and John R. Turnquist, both of Denver, Colo., on the brief), for appellant.

Carle Whitehead, of Denver, Colo. (Edward Miller and Albert L. Vogl, both of Denver, Colo., on the brief), for appellee.

Before PHILLIPS, BRATTON and MURRAH, Circuit Judges.

MURRAH, Circuit Judge.

The Agency Paper Company, a partnership, as the owner of the trade-mark "Sky-Rite" for air mail stationery, brought this suit to enjoin appellee, Rockmont Envelope Company, from using the words "Sky Mail" on its air mail stationery, both of which are sold to the public through retail outlets. The trial court sustained Rockmont's motion for summary judgment under Rule 56 of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c, holding that the pleadings, depositions and affidavits submitted for and against the motion presented no genuine issuable fact, and that Rockmont was therefore entitled to a judgment as a matter of law. The question for decision here is whether the record presents a genuine issue of fact which the trial court was required to resolve after a full hearing.

After specifically alleging the jurisdictional prerequisites, the complaint states that since May, 1938, Agency has been selling stationery in interstate commerce in the United States, and for some time past in the State of Colorado; that these products are put up and marketed in a package of distinctive design and appearance, and through extensive advertising of its duly registered trade-mark and label "Sky-Rite", the products have come to be publicly known and recognized as the products of the Agency Paper Company. It was stated upon information and belief that Rockmont had been selling air mail paper and envelopes in interstate commerce and in the State of Colorado bearing the designation "Sky Mail"; that Rockmont's designation "Sky Mail" and its labelings were adopted after Agency's products had been widely distributed and advertised to the public, and because of their resemblance and similarity, Rockmont's products were likely to be passed off on the public as and for Agency's trade-marked product; and that the use of the said labelings therefore constituted infringement and unfair competition. It was further averred upon information and belief that Rockmont's imitation of Agency's labeling, trade-mark and advertising was deliberately and intentionally designed to create confusion and mistake in the public mind, and to deceive purchasers in the belief that Rockmont's products were Agency's. The complaint prayed for an injunction, an accounting and for damages.

Rockmont answered denying the validity of the trademark as no more than the registration of a picture of an airplane performing sky writing, connected and associated with the descriptive words "Sky-Rite". It specifically denied the allegations of similarity, infringement and unfair competition, and affirmatively pleaded that the term "Sky Mail" is merely a variant of "air mail", and therefore could not infringe Agency's trade-mark "Sky-Rite"; that the word "sky" being purely descriptive, was incapable of protective ownership.

Rockmont took the deposition of one of Agency's partners, who identified for the record specimens of all of its products and advertising, as well as specimens of Rockmont's products and advertising alleged to be an infringement. Comparing the two specimens, he testified "they all look alike to me", but refused to state in what detail the two specimens were in fact similar. In support of its motion for summary judgment, Rockmont filed an affidavit of one Perrine who identified eight other air mail stationery products using the word "sky" in combination with other words as a part of its labeling. Agency filed the affidavits of two investigators, a man and his wife, to the effect that in 56 stores in San Francisco and Oakland, California, they asked for "Sky-Rite" air mail paper; that in 3 stores the clerk sold them "Sky-Rite"; in 2 stores the clerk offered them both "Sky-

Rite" and "Sky Mail"; in 3 stores the clerk said he was out of "Sky-Rite" and offered "Sky Mail"; in 7 stores the clerk offered "Sky Mail" and inquired if that was what they wanted; in 16 stores the clerk sold them "Sky Mail" without any comment; in 24 stores the clerk had neither; in 1 store one clerk said to another, "give these people 'Sky-Rite', and the second clerk said "we are out of 'Sky-Rite' ". Another affidavit was filed to the effect that when Rockmont applied for the registration of its trade-mark "Sky Mail", it was referred to other registrations, including Agency's.

The specimens of Agency's products as identified for the record consist of lightweight writing paper and envelopes contained in small cartons suitable for effective display. The distinctive feature of the trade-mark appearing on each carton is an outline of parts of the globe, above which in a blue background in a slanting position appears the hyphenated word "Sky-Rite". The word simulates white vaporous script as if written by the airplane shown below in the figure. Each sheet of paper and apparently each envelope bears this design in watermark.

Rockmont's merchandise is likewise sold in cartons of approximately the same size, containing lightweight paper and envelopes. On each carton is the legend "Sky Mail" written against a white background in a red slanting flourish. Immediately above in some but not all of the cartons in slightly smaller red block letters appears the word "Rockmont". Immediately below the words "Sky Mail," also in red block type, is the word "Handipack". In the center of the package in blue block letters is the word "Stationery", below which in red block letters are the words "for foreign and domestic air mail". The entire design is bordered by red and blue slanting lines on the white background similar to conventional air mail markings.

In a memorandum of his views, the learned trial court recognized the decisive question as whether a genuine issue of fact was presented on the record. "If so" said the court, "the motion must be denied", citing and quoting from Sartor v. Arkansas Natural Gas Corp., 321 U.S. 620, 64 S.Ct. 724, 88 L.Ed. 967, but concluded that a visual comparison of the two specimens left no factual issue to be decided.

To borrow the language of Judge Huxman in Schreffler v. Bowles, 10 Cir., 153 F.2d 1, 3, "The salutary purpose of Rule 56 is to permit speedy and expeditious disposal of cases where the pleadings do not as a matter of fact present any substantial question for determination. Flimsy or transparent charges or allegations are insufficient to sustain a justiciable controversy requiring the submission thereof. The purpose of the rule is to permit the trier to pierce formal allegations of facts in pleadings and grant relief by summary judgment when it appears from uncontroverted facts set forth in affidavits, depositions or admissions on file that there are as a matter of fact no genuine issues for trial." See also Sabin v. Home Owners' Loan Corp., 10 Cir., 151 F.2d 541; Brooks v. Utah Power & Light Co., 10 Cir., 151 F.2d 514. But, it is not the purpose of the rule to deprive litigants of their right to a full hearing on the merits if any real issue of fact is tendered. Sartor v. Arkansas Natural Gas Corp., supra, 321 U.S. at page 627, 64 S.Ct. 724. The power to pierce the flimsy and transparent factual veil should be temperately and cautiously used lest abuse reap nullification. See Doehler Metal Furn. Co. v. United States, 2 Cir., 149 F. 2d 130, and cases cited in footnote 6.

While our immediate problem is whether the record presents an issuable fact, the real question for adjudication tendered by the pleadings is one of trademark infringement, and some understanding of the substantive rights of the parties is essential to the solution of the ultimate problem. The trial court followed the generally accepted rule as announced by this court in Schneider Brewing Co. v. Century Distilling Co., 10 Cir., 107 F.2d 699, 703, to the effect that the function of a trade-mark as a right appurtenant to a business or trade is to "designate the goods as the product of a particular trader and to protect his good will against the sale of another's product as his." See also 3 Torts A.L.I. Sec. 715. Although the primary purpose of a trade-mark is to indicate the ori-

gin, manufacture and ownership of the article in the mind of the purchasing public, it is usually associated with the quality of the product which it symbolizes. Trade-marks are no longer "regarded simply as an indicium of a known source", they now "perform the additional function of an advertising and selling device". Id., Comment b and c.

It is said that "The protection of trade-marks is the law's recognition of the psychological function of symbols. If it is true that we live by symbols, it is no less true that we purchase goods by them. A trade-mark is a merchandising short-cut which induces a purchaser to select what he wants, or what he has been led to believe he wants. The owner of a mark exploits this human propensity by making every effort to impregnate the atmosphere of the market with the drawing power of a congenial symbol. Whatever the means employed, the aim is the same, to convey through the mark, in the minds of potential customers, the desirability of the commodity upon which it appears. Once this is attained, the trade-mark owner has something of value. If another poaches upon the commercial magnetism of the symbol he has created, the owner can obtain legal redress." Mishawake Rubber & Woolen Mfg. Co. v. Kresge Co., 316 U.S. 203, 205, 62 S.Ct. 1022, 1024, 86 L.Ed. 381.[1]

With essential qualifications, one infringes the trade-mark of another if the designation he uses to identify his goods is "identical with or confusingly similar" to another's protected trade-mark. 3 Torts A.L.I., Sec. 717. The degree of resemblance or similarity necessary to constitute infringement is often incapable of exact definition. McLean v. Fleming, 96 U.S. 245, 24 L.Ed 828. Restatement has however listed the following as important factors entering into the equation: "(a) the degree of similarity between the designation and the trade-mark or trade name in (i) appearance; (ii) pronunciation of the words used; (iii) verbal translation of the pictures or designs involved; (iv) suggestion; (b) the intent of the actor in adopting the designation; (c) the relation in use and manner of marketing between the goods or services marketed by the actor and those marketed by the other; (d) the degree of care likely to be exercised by purchasers." 3 Torts A.L.I., Sec. 729.

It is the generally accepted rule that a designation is confusingly similar to a trade-mark if an ordinary prospective purchaser, exercising due care in the circumstances, is likely to regard it as coming from the same source as the trade-marked article. Schneider Brewing Co. v. Century Distilling Co., supra; Victor American Fuel Co. v. Huerfano Agency Co., D.C., 15 F.2d 578; Solis Cigar Co. v. Pozo, 16 Colo. 388, 26 P. 556, 25 Am.St. Rep. 279; Driverless Car Co. v. Glessner-Thornberry Driverless Car Co., 83 Colo. 262, 264 P. 653; Dwinell-Wright Co. v. National Fruit Product Co., 1 Cir., 140 F.2d 618; 3 Torts A.L.I., Sec. 728. The question is usually one of fact (Seven Up Co. v. Cheer Up Sales Co., 8 Cir., 148 F.2d 909), which in some cases may be determined by visual comparison, as where specific differences are so marked that the general appearance could not be confusing, Victor American Fuel Co. v. Huerfano Agency Co., supra, or where it is inconceivable that an ordinary purchaser examining the two labels would be deceived. Schneider Brewing Co. v. Century Distilling Co., supra; McLean v. Fleming, supra; Schlitz Brewing Co. v. Houston Ice & Brewing Co., 250 U.S. 28, 39 S.Ct. 401, 63 L.Ed. 822; Dwinell-Wright Co. v. National Fruit Product Co., supra. In other cases extrinsic evidence may be necessary. 3 Torts A.L.I., Sec. 728, Comment a.

It is contended that the trial court merely made a side by side visual comparison of the two specimens, and judged the question of infringement solely by the reaction of his trained mind to such comparison. It is not the distinguishing details manifest by ocular comparison in juxtaposition which determines confusing similarity, the test is more objective than that. It is the total effect produced by the designation in the mind of the ordinary pur-

---

[1] "Let's Talk About Trade-Marks", 26 Journal of Patent Office Society, Sept. 1945, p. 614.

chaser, exercising due care in the market place. A prospective purchaser does not ordinarily carry a sample or specimen of the article he knows well enough to call by its trade name, he necessarily depends upon the mental picture of that which symbolizes origin and ownership of the thing desired. Schlitz Brewing Co. v. Houston Ice & Brewing Co., supra; Seven Up Co. v. Cheer Up Sales Co., supra; 3 Torts A.L.I., Sec. 728, Comment b; Nimms on Unfair Competition and Trade-marks, p. 323. On the other hand, his mental picture of the desired article must be sufficiently vivid to enable him to exercise the discernment and discrimination of an ordinary member of the purchasing public, otherwise the owner of the trade-marked article has not established any cognizable right to protection.

The trial court was of the view that the question whether Rockmont's designation was "apt to create confusion in the mind of the public, can only be resolved by putting the two side by side and comparing them". When this was done, the court concluded that one exercising ordinary care and caution could not be mislead or deceived if offered "Sky Mail" as and for "Sky-Rite" stationery. Thus, the court applied the test not of the trained and wary mind of a judge, but abstractly at least looked at the two specimens through the eyes and with the mind of an ordinary purchaser exercising due care and caution.

It is suggested that in deciding the question of confusing similarity solely upon a visual comparison of the two specimens, the trial court completely ignored the testimony of one of Agency's partners to the effect that the two specimens looked alike to him, as well as the facts developed by the affidavits of the investigators to the effect that certain dealers offered to sell them "Sky Mail" when they requested "Sky-Rite". It is contended that these facts, especially when considered in the light of alleged intentional infringement, certainly present a genuine issue of fact.

■■■ In view of the accepted rule, the partner's bare statement that the two specimens looked alike to him cannot be said to have any probative value as evidence of confusing similarity. Furthermore, the fact that certain retailers offered to sell investigators "Sky Mail" when they requested "Sky-Rite" is no evidence that an ordinary prospective purchaser, exercising due care, would have been deceived into accepting "Sky Mail" thinking that he was getting "Sky-Rite". It is not alleged, nor is there evidence, tending to show that Rockmont suggested, encouraged or knew that any dealers were offering its products as and for those of Agency's. Cf. Warner & Co. v. Eli Lilly & Co., 265 U.S. 526, 44 S. Ct. 615, 68 L.Ed. 1161; American Brake Shoe & F. Co. v. Alltex Products Corp., 2 Cir., 117 F.2d 983.

If, however, as alleged, Rockmont adopted the designation "Sky Mail" with the intent and for the purpose of colorably imitating Agency's trademark "Sky-Rite" in order to create confusion and mistake in the public mind, and to deceive purchasers in the belief that its products were those of Agency, such intent is sufficient to justify an inference of confusing similarity. See 3 Torts A.L.I., Sec. 729, Comment b & f. Those allegations stand unrefuted on this record, and unless conclusively negatived by a visual comparison of the two specimens, they create an inferable fact which the trial court must factually resolve.

■■■ While from a comparison of the two specimens side by side we think there is little likelihood that the ordinary purchaser, while exercising due care and caution, would be mislead and deceived into accepting "Sky Mail" as and for "Sky-Rite", we doubt the propriety of summarily deciding that question as a matter of law on this record. An expeditious disposition of cases is a cardinal virtue of the administration of justice, but it is not more important than one's fundamental right to his full day in court. In cases of this kind where no single factor controls the equation, and the court is necessarily required to resolve the question of alleged intent in arriving at its judgment, we are of the opinion that justice can best be served by a trial of the question on its merits.

The case is reversed and remanded with directions to proceed accordingly.